HUGH B. MUDD, Appellant, v. FARMERS' & MERCHANTS' BANK OF HUNNEWELL, MISSOURI, Respondent.

Kansas City Court of Appeals, January 5, 1914.

1. **BANKS AND BANKING: Check Deposited: Purchaser.** Where a bank receives a check and gives the payee credit therefor on the bank books as so much money deposited, against which the depositor can immediately draw, the bank becomes the purchaser of the check. The title to the check passes even in the absence of a special agreement as to the terms on which the check was received.

2. ———: ———: **Collection or Purchase.** There is a distinction between a transaction where a bank receives a check on another bank from a person and gives him credit for so much money deposited which he can check on, and one where the check is received for collection only. In the former the bank becomes the owner of the check; in the latter it is merely the agent of the payee of the check to collect it.

3. ———: ———: **Agreement Concerning.** The result of depositing a check in a bank depends, like that of any other business contract or transaction, upon the agreement made in reference thereto and the intent of the parties. If an express agreement is made between them, that agreement should prevail.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller*, Judge.

REVERSED AND REMANDED (*with directions*).

*Whitecotton & Wight, H. D. Dale* and *D. H. Eby* for appellant.

*E. O. Doyle* and *Jerry M. Jeffries* for respondent.

TRIMBLE, J.—On February 3, 1911, plaintiff, claiming to have $960 on deposit with the defendant bank, presented his check for that amount and payment was refused on the ground that he had no funds on deposit therein. This suit was thereupon instituted to recover said amount with interest at six per cent from date of demand. Issue was joined and, after a trial, the jury returned a verdict for plaintiff. The court granted defendant a new trial and from this order plaintiff has appealed.

The petition alleged, in substance, that on January 30, 1911, A. A. Wiseman executed and delivered to plaintiff a check for $960 drawn on the Clarence Savings Bank payable to plaintiff or bearer; that on the same day plaintiff, for value received, assigned, transferred, and delivered said check to defendant, in consideration of which the defendant accepted said check as a money deposit to plaintiff's credit and gave plaintiff credit therefor as a money deposit against which plaintiff might draw at any time; that plaintiff on February 3, 1911, presented his check therefor and payment was refused, wherefore judgment was asked.

Mudd v. Bank.

The answer, after denying specifically that such check was issued or that it was ever received or accepted as a money deposit against which plaintiff could check at any time, set up that, after plaintiff had indorsed said check in blank, it took the same as an accommodation to plaintiff, relying on said contract of indorsement, and passed the amount of said check to plaintiff's credit, and, in the regular order of business, sent the check to the Clarence bank for payment which was refused; that said check was thereupon duly protested for nonpayment, and defendant withdrew the credit so given plaintiff on its books and notified plaintiff thereof, and refused to honor plaintiff's check for the reason that no funds of plaintiff were in defendant's bank and it did not owe plaintiff anything. The reply denied these allegations, and set up that no one had authority to indorse plaintiff's name on the check.

A few days prior to January 30, 1911, plaintiff agreed with Wiseman to sell him six mules and a mare for $960. On the morning of the above day, Mr. Mudd, who lived at Monroe City, placed the animals in charge of his nephew, Sydney Mudd, with directions to take them to Hunnewell for delivery to Wiseman, but in no event to deliver them unless he received the money therefor or a cash deposit, and to be sure the money was "all right" as a money deposit, or else bring the stock home.

· Young Mudd took the stock to Hunnewell and there met Wiseman in the defendant bank. Wiseman was giving checks on the bank at Clarence in payment for stock, and Herron, the cashier of the defendant bank (which for convenience will be called the Hunnewell bank) had talked over the telephone to the Clarence bank and obtained assurances from it that Wiseman's checks were good. Wiseman then gave to young Mudd his check for $960, payable to "H. B. Mudd or bearer," drawn on the Clarence bank. Young Mudd presented the check to the cashier, Herron, telling him that the

property was his uncle's property, and that he (young Mudd) must be certain about the money before he left the stock there, and be certain the money was "all right," that Mr. Mudd did not want him to leave the mules unless he knew he would get his money. Mr. Herron assured him that the money was all right, that he had heard from the bank at Clarence and the check was good. Young Mudd then handed the check to Herron, the cashier, who requested Mudd to indorse his uncle's name on it, and young Mudd then wrote on the back "H. B. Mudd by Sydney Mudd." Herron then took the check and credited plaintiff with a deposit of $960 and gave young Mudd a deposit slip showing that fact. The young man then telephoned his uncle what he had done except that he did not tell him he had written his name on the check. His uncle reiterated his previous order not to leave the stock until the money was good. Thereupon the young man went back to the bank and told Herron that his uncle didn't want him to leave the stock until he knew he would get his money; that if he left the money there he wanted it subject to his uncle's use; that the money had to be good before he would leave the stock. Mr. Herron assured him the money was all right and subject to his uncle's use.

In the meantime the uncle, not being fully satisfied that the money was on deposit for his use at all events, got Mr. Elbert Yates, assistant cashier of one of the banks at Monroe City, to telephone Herron and find out if the Hunnewell bank was taking the check as a "cash deposit," and, if not, he was going to have the boy bring the stock home. Yates communicated this by telephone to Herron. He did not use the words "cash deposit" but he said to Herron over the telephone: "Mr. Mudd is not quite satisfied about his check, and he wants to know if you are paying; if the payment is *final*." Herron replied, "Yes." Yates then

said: "If not, Mr. Mudd told the boy to bring the horses home." To this Herron replied, "You needn't do that. It is perfectly safe, and Mr. Mudd can check on it as he likes." There was testimony that the word "final," as used by bankers in reference to a check deposited, means that the matter is settled and that the check is taken as cash and the transaction is ended.

After this assurance had been given by the Hunnewell bank, Sydney Mudd left the stock with Wiseman and went home. Wiseman shipped the stock to St. Louis that night and disposed of it. When the check, taken by the Hunnewell bank, reached the Clarence bank, it was found there was not enough money on deposit there to Wiseman's credit to pay it, and payment was therefore refused. The check was duly protested, and the defendant bank struck plaintiff's deposit from its books and refused to honor plaintiff's check thereon or to recognize him as having any funds in said bank.

The facts hereinabove outlined are disputed by defendant. But, since there is ample evidence to support such facts, and the jury found in plaintiff's favor, and the trial judge did not set the verdict aside because it was against the weight of the evidence, we must accept, as true, the evidence supporting the verdict.

The check was payable to plaintiff "or bearer" and was therefore negotiable. [Burns v. Kahn, 47 Mo. App. 215.] By receiving the check and giving plaintiff credit therefor on the bank books as so much money deposited, against which plaintiff could immediately draw, defendant became a purchaser of said check. That is, the title to said check passed to and vested in the defendant bank even had there been no special agreement as to the terms on which the check was accepted. There is a distinction between a transaction where a bank receives a check on another bank from a person and gives him credit on its books for so much

.money deposited which he can check on, and one where the check is received *for collection only*. [Kavanaugh . v. Bank, 59 Mo. App. 540.] In the former, the bank becomes the owner of the check; in the latter it is merely the agent of the payee of the check to collect . it. [See also Ayres v. Bank, 79 Mo. 421; Bullene v. Coates, 79 Mo. 426.] Of course, if a valid indorsement has been placed thereon by the payee of the check, and the check is not paid by the bank on which it is drawn, then, after due presentment, demand of payment, and notice of nonpayment, the bank so receiving such check as a deposit will have recourse on the one depositing it, such recourse being against him as an indorser. But this does not prevent the title from passing.

In fact, the result of depositing a check in a bank depends, like that of any other business contract or transaction, upon the agreement made in reference thereto and the intent of the parties. If an express agreement is made between them, that agreement should prevail. [Polack v. Bank of Commerce, 168 Mo. App. 368, l. c. 376.] (It is true, in the case cited, the check was on the depositing bank; but this fact does not change the rule that, *if the check is received upon terms specially and expressly agreed to,* those terms must govern.) So that, if the Hunnewell bank agreed to accept the check as a cash deposit which was "final," this agreement ought to bind the parties the same as in any other contract. The question whether there was such an express agreement was submitted to the jury and it found for plaintiff. We must, therefore, in considering plaintiff's general right of recovery, treat the said agreement as having been established.

It is urged that no evidence was admissible to show that such agreement existed because it would contradict the written contract of indorsement created by Sydney Mudd when he wrote on the back of the check "H. B. Mudd by Sydney Mudd." To this, there

may be several answers. In the first place, it was shown that Sydney Mudd had no authority to make the indorsement, and, as the check was payable to "bearer," its indorsement was not necessary to pass the ownership of the check to the bank. It will not do to say that Sydney Mudd was held out to the bank as having such authority, because Herron was informed, at the time young Mudd presented the check, that his authority was limited, that he had no authority to do anything that would in any way render problematical or conditional Mr. Mudd's obtaining the cash. This was sufficient to prevent Sydney Mudd's act of indorsement from binding his uncle by virtue of any implied authority. The question of young Mudd's authority to indorse his uncle's name, and also the question whether young Mudd was held out as having such authority, were both submitted to the jury and were by the jury found adversely to defendant. In the next place, even if the contract of indorsement might be said to be a valid written contract, binding the elder Mudd at the time it was made, still there was evidence showing that, *after* it was made, Herron and the elder Mudd, through Elbert Yates, had an express contract that the deposit of the check as cash was "final" so far as Mudd was concerned. In other words, even if the contract of indorsement could be said to have had a valid existence, it was superseded by the *subsequent* contract by which the Hunnewell bank accepted the check unconditionally as cash and as a *finality;* that is, Mr. Mudd's right to the money became settled and unquestioned, not dependent upon any contingency express or implied. Defendant concedes that whatever did take place between Herron and Yates occurred after the alleged indorsement was made.

It is urged that there was no consideration to the bank for the making of such subsequent contract. But it must be borne in mind that, at the time this subsequent contract was made, Mr. Mudd still had control

over the stock and was insisting that they be brought back to him if he did not get his money unconditionally. Herron knew this and made the agreement and allowed, and, in fact, told, Mudd through Yates not to have the stock brought back home. The bank is therefore hardly in a position to claim no consideration for the agreement. Besides, the opportunity of getting and retaining the deposit was some consideration which doubtless influenced Herron to make the agreement. In addition to this, Mudd did not know his name was on the check as indorser. He did not know of it and, in fact, there was no valid written contract. The point that such agreement was *ultra vires* is not tenable. It was not *ultra vires* on the part either of the cashier or the bank to make such an agreement. Besides, *ultra vires* was not pleaded.

In the third place, it might be said that the plaintiff's suit for the money was on one cause of action (the relation of debtor and creditor established by the deposit), and the right of the bank to counterclaim in opposition thereto was on another cause of action (the alleged contract of indorsement). This being the case, the bank should, in strictness, have pleaded a *counterclaim* upon said indorsement, rather than merely setting it up as a defense to plaintiff's cause of action. Whether it is necessary under the circumstances of this case to decide this technical matter of pleading or not, it is properly mentioned here as showing, at any rate, that the verdict is responsive to the issues as made by the pleadings. So much, therefore, for the subject of plaintiff's general right to recover. Whether or not the verdict rendered should have been set aside depends upon whether there was error in the admission of evidence or in the instructions.

As to error in the admission of evidence, no particular testimony, the admission of which was considered erroneous, was specified by the court, nor did it set aside the verdict as against the weight of the evi-

dence. Nor does defendant specify any, unless it be in the claim that evidence showing a subsequent contract to the indorsement should not have been admitted. The admission of such testimony, however, was proper. [1 Elliott on Evidence, sec. 581; 4 Wigmore on Evidence, sec. 2441.]

The first reason assigned by the court for setting aside the verdict was that it erred in refusing defendant's instruction No. 2. We think, however, that the issue attempted to be submitted in this instruction was covered by plaintiff's instruction which required the jury to find that the defendant bank accepted said check "unconditionally as a cash deposit" before it could find for plaintiff. But, be this as it may, the refused instruction based defendant's right to a verdict in its favor upon the absence of an agreement between plaintiff and defendant, at the time defendant took the check, that plaintiff was not to be liable on the check. Such an agreement was not claimed nor pleaded by plaintiff, and was therefore not involved in the issues. Hence the refusal of this instruction was not error.

The next reason assigned is that the court erred in instruction No. 1, given upon the court's own motion. The only complaint against this instruction is that it did not include any rights of defendant to hold plaintiff under the alleged indorsement. But it did base plaintiff's right of recovery upon whether or not the bank "accepted said check *unconditionally* as a *money* deposit." This, it seems to us, covers the real issue involved in the case, namely, what were the terms upon which defendant accepted the check? If it accepted the check *unconditionally* as *money,* then it agreed to abrogate the alleged indorsement if there was one, or agreed to take it as money without an indorsement if there was none. The answer did not set out a suit on the indorsement but merely set it up as a fact going to show that the check was not unconditionally taken as money. If the bank accepted the check as *money with-*

*out condition* or limitation of any kind, what did the so-called indorsement have to do with it? Was it anything more than a circumstance offered to show that the check was not taken as money finally and absolutely? And if it was thus finally and absolutely taken as money, does not this necessarily involve the taking thereof without regard to the indorsement. In fact, if the bank, subsequent, to the alleged indorsement, agreed to take the check absolutely, finally, and unconditionally, as *money,* then the question of the validity or invalidity of the indorsement became immaterial. So that, after all, the real and only question was, what were the terms upon which the bank agreed to take the check?

Defendant's instruction No. 1 was properly refused because it made Sydney Mudd's right to indorse the check settle and decide the question of plaintiff's right of recovery without regard to any other fact or circumstances in the case. Suppose he did have implied authority to indorse the check, if, through the agreement made over the telephone by Herron acting for the bank and Yates acting for the elder Mudd, the agreement was to take the check as money unconditionally and finally, without condition or recourse on Mudd in any way, then young Mudd's indorsement was superseded whether valid or invalid at the time it was made.

Plaintiff's instruction No. 2 was properly given as there was no evidence showing or tending to show that Wiseman had ever settled with plaintiff for the check. Likewise plaintiff's instruction No. 3, bearing solely on the power of Sydney Mudd to bind his uncle by the alleged indorsement, was proper. It does not limit the agent's powers to those given him by his principal but expressly includes those also which he would impliedly have by a holding out.

Another of defendant's instructions, also numbered 2, which was modified and given by the court,

was properly modified.  As asked, it was erroneous, and, as modified, it could not have misled the jury. Plaintiff's instruction told the jury that if defendant "accepted the check unconditionally as a money deposit" plaintiff could recover; and defendant's instruction, as modified, told the jury that the burden was on plaintiff to show that it was accepted as a money deposit.

Defendant's instruction No. 3 was properly refused since it erroneously told the jury that if the bank took the check and credited plaintiff with it, and that it was not paid when presented to the Clarence bank, then defendant was entitled to a verdict regardless of the terms on which the check was given.

. There was no error in refusing the other instructions since they all contained an erroneous element in them making their refusal proper.

Defendant's theory seems to have been that the establishment of the validity of young Mudd's indorsement, at the time the check was handed in to the bank, would constitute a *complete defense* to plaintiff's action.  Defendant failed to note that, even if it were valid at that time it could be subsequently annulled or superseded by an agreement that the check would be received as cash, absolutely and finally, without regard to the indorsement.  Failing to note this, defendant asked no instructions bearing upon the subsequent agreement and its effect on the rights of the parties.

Under the pleadings and the instructions as asked, we think there was no error committed in the trial of the case, and that the trial court should not have set the verdict aside.

While the verdict was for $12.40 more than was due (owing to an error in the computation of interest) yet, as the verdict was not set aside on this ground, and as appellant filed a remittitur in this court of the excess claimed by respondent, and asks only the

amount actually due at the date of the verdict, this will not compel a retrial of the cause.

The judgment is reversed and the cause remanded with directions to enter judgment on the verdict for $1058.40 as of date of the verdict, to-wit, October 18, 1912. All concur.