GAVIN *v.* ARMISTEAD.

Opinion delivered May 6, 1893.

*Fraud—Purchase on credit—Intention not to pay.*

> It is not proper to charge the jury that if a purchaser of goods upon credit has no reasonable expectation of being able to pay for them, this is equivalent to an intention not to pay.

Appeal from Crittenden Circuit Court.

JAMES E. RIDDICK, Judge.

*W. G. Weatherford* for appellant.

1. The court erred in refusing the first and third instructions for plaintiffs; also in its charge on its own motion. Reviewing 55 Ark. 48; 48 *id.* 71; 45 *id.* 140 and 47 *id.* 250, and cites 9 Gill & J. 278; 3 Ohio St. 162; 53 N. Y. 465; *ib.* 466; 1 Paige, 492. If a purchaser has no reasonable expectation of being able to pay for goods purchased, this is equivalent to an intention not to pay. 3 Otto, 631, L. Co-op. ed. book 23, p. 994, notes; 1 Paige, 492; 52 N. H. 301; 2 Lans. 87; 31 Oh. St. 162; 2 Abb. App. Dec. 470; 13 Minn. 109; 47 N. W. Rep. 347; 16 Conn. 71; 19 Mo. 36; 20 *id.* 546; 20 Barb. 253; 21 *id.* 585; 1 Hill, 302; 18 N. Y. 588.

2. Appellees were not innocent purchasers. 55 Ark. 582; 50 *id.* 320; 47 *id.* 252; 9 Gray, 97; 7 Watts, 86; 6 Wall. 299.

*E. F. Adams* and *C. H. Trimble* for appellee.

The case in 55 Ark. 45, is conclusive of this, both as to the law and facts.

HUGHES, J. This is an appeal from a judgment in favor of the appellees in a suit brought by the appellants against them to recover possession of goods which, the appellants allege, had been bought of them by E. Buck, surviving partner of Buck & Trexler, merchants, who,

they allege, was at the time insolvent, and fraudulently concealed his condition, and represented that he was solvent, for the purpose of getting possession of the goods without paying for them, and with the intention not to pay for them.   Buck had sold the goods to Armistead and Lundee, who had paid for his entire stock, including the goods in controversy, $1300, and as part of the consideration for the sale had satisfied a large pre-existing debt they held against Buck.

It is contended that Armistead and Lundee were not *bona fide* purchasers ; that, if entitled to protection at all, they are entitled to protection only for the sum of $1300, the new consideration paid by them.   No representation as to his solvency was made by Buck at the time he bought the goods.   Those who sold the goods had sold him goods before then, and solicited him to buy at the time he bought the goods in controversy.

After the evidence was all in, the court refused, at appellant's request, to instruct as follows :

"1.   If the jury believe from the evidence that Buck procured the sale of the goods in suit by fraudulently concealing his insolvency, he was guilty of a fraud, which entitled the owner to disaffirm the sale and recover the goods.

"3.   If the purchaser has no reasonable expectation of being able to pay for them, this is equivalent to an intention not to pay.

"5.   If one takes property in payment of an existing debt, and also receives a small cash payment at the time, he is only protected under the claim of being an innocent purchaser for value, to the extent of the cash payment made at the time, and if the jury find that such purchaser has realized a sum equal to the cash paid, they are warranted in finding for the plaintiff."

The court of its own motion instructed :

"2. The mere fact, if found, that Buck was insolvent at the time of purchase from the plaintiffs is not sufficient to avoid the sale, for the law does not require an insolvent person to disclose his insolvency when he is not asked anything by the seller concerning his solvency or financial standing; but the jury must believe that Buck did not intend to pay for the goods at the time he purchased them.

"3. Even if it be proved that Buck, at the time of the purchase, had no reasonable grounds to believe that he would be able to pay for the goods, this will not by itself be sufficient to avoid the sale, unless the jury believe that Buck did not intend to pay for the goods, and, in arriving at their conclusions on that point, it is proper for the jury to consider his financial condition at the time, whether solvent or not; whether he had any reasonable grounds to believe that he would be able to pay for the goods, and all other facts proven in the case. And if from such circumstances they believe that he did not intend to pay for the goods, the sale is void as to all persons except innocent purchasers.

"4. A person purchasing goods from another who has obtained them through fraud will not be protected as an innocent purchaser if the only consideration he has paid for the goods is a pre-existing debt, and the defendants in the case will not be protected as innocent purchasers, although they paid a portion of the consideration in cash, if the jury further find that they received on the purchase, in addition to the goods in controversy, other goods whose title is undisputed, and more than sufficient to reimburse them for the cash outlay."

Motion for new trial, because court refused each instruction asked, ·and because of the several instructions given of its own motion; finding of jury contrary to law; contrary to evidence; because plaintiffs were surprised

at defendant's evidence that no goods were hauled to warehouse on day following sale to Armistead.

Of the evidence, it is sufficient to say that, in the opinion of the court, it is sufficient to support the verdict. Under the rule long since settled in this court, a judgment will not be reversed here upon the weight of evidence, if there is legal evidence upon which the verdict might have been found.

We may as well say here that if there was error in the fourth instruction given by the court of its own motion, it was in the appellants' favor, and they cannot be heard to complain. This covers the fifth asked by appellants and refused.

The second instruction given by the court of its own motion was clearly correct.

The only serious questions in the case arise upon the court's refusal to give instruction number three asked for by the appellants, and the giving of instruction number three of its own motion. Number three refused is : "If the purchaser has no reasonable expectation of being able to pay for them (the goods), this is equivalent to an intention not to pay." The counsel for appellants contend that this was held in the case of *Talcott* v. *Henderson*, 31 Ohio St. 162. We do not so understand that case. It is true the court said in that case : "Hence, if a purchaser of goods has knowledge of his own insolvency, and of his inability to pay for them, his intention not to pay should be presumed. I would go a step further (says the judge), and hold that an insolvent purchaser, without reasonable expectations of ability to pay, should be presumed to intend not to pay." But it is said in the same opinion, "An intention on the part of the purchaser of goods not to pay for them, existing at the time of purchase, and concealed from the vendor, is, unquestionably, such a fraud as will vitiate the contract. But it is as certainly true, on the other

37

hand, that, where no such fraudulent intent exists, the mere fact that the purchaser has knowledge that his debts exceed his assets, though the fact be unknown and undisclosed to the vendor, will not vitiate the purchase. Whether, therefore, a contract of purchase, where the purchaser fails to disclose his known insolvency, is fraudulent or not depends on the intention of the purchaser, and whether that intention was to pay or not to pay is a question of fact and not a question of law."

To tell the jury that the finding of the fact that the purchaser has no reasonable expectation of being able to pay for goods which he purchases is equivalent to finding that he did not intend to pay, is to instruct the jury upon the weight of the evidence, which the Constitution of the State forbids. It is true that such evidence would have a strong tendency to prove that it was the purchaser's intention not to pay, but as matter of law it is not conclusive, and it is wrong to tell a jury that it is. Sec. 23, art. 7, of the Constitution.

The first part of instruction number three given by the court is not happily framed, inasmuch as it tends to leave the impression that the jury could not find that the sale was vitiated by fraud from the fact alone that, at the time of the purchase, the purchaser had no reasonable expectation that he would be able to pay for the goods. But, in the subsequent portion of the instruction, the court told the jury that they must find that the purchaser did not intend at the time of the purchase to pay for the goods, before they could find that the purchase was fraudulent ; and that, in arriving at their conclusion upon that point, it was proper for them to consider the financial condition of the purchaser at the time of the purchase, whether he was solvent or not, whether he had any reasonable ground to believe that he would be able to pay for the goods and all other facts proven in

the case. And that "if from such circumstances they believe that he did not intend to pay for the goods, the sale is void as to all persons except innocent purchasers." Taking the instruction all together and construing it in the sense evidently intended, it announced the law correctly.

As the question of the intention of Buck to pay or not to pay for the goods he bought of Gavin & Co. at the time he bought was a question of fact to be determined by the jury from all the facts and circumstances in proof in the case, and this was properly submitted to the jury by the court's instructions, and the jury have found in favor of the appellees, the judgment is affirmed.

Bunn, C. J., did not participate in the decision of this cause.