### G. H. LOGAN v. OKLAHOMA MILL COMPANY.

(Filed September 3, 1904.)

1. CAPACITY TO SUE—Practice. An objection that one has no legal capacity to sue goes to his right to maintain a suit at all, as, for instance, that he is an idiot, an insane person, a minor, etc., and does not include the objection that the action is not prosecuted in the name of the real party in interest.

2. JOINT TENANTS—FRAUD. G. H. Logan and R. C. Brennen bought land and had it conveyed to themselves jointly. Brennen farmed the land to wheat, Logan paying for half of his time and half of the expense incident to raising the wheat and marketing the same: Held, That these facts, in the absence of an agreement to that effect, do not constitute a partnership, but that the parties were simply joint owners of the land and crops; and the fact that Brennen sold all of the wheat raised on the land for the year 1901 to the appellee, under an agreement that it should be applied on

his son's debt to appellee, did not prevent Logan from maintaining a suit against the appellee for his share of the wheat, as the agreement between the appellee and Brennen was a fraud against him: The appellee being in possession of such facts and circumstances as charged him with knowledge of Logan's interest in the wheat; but even if not in possession of such facts and circumstances, the plaintiff should recover, because the defendant, not having parted with anything of value at the time it received the wheat, was in no worse condition than when it bought it, and therefore should have returned the wheat to Logan, or paid him the contract price therefor.

(Syllabus by the Court.)

*Error from the District Court of Kingfisher County; before C. F. Irwin, Trial Judge.*

W. W. *Noffsinger,* for plaintiff in error.

P. S. *Nagle* and W. A. *McCartney,* for defendant in error.

Opinion of the court by

BURWELL, J.: G. H. Logan and R. C. Brennen bought two farms, and had the titles conveyed to themselves jointly. Druing the three or four years that they owned the land, Brennen farmed it to wheat, Logan paying for half of his time and half of the expenses. Brennen, each year, sold the wheat to the defendant in error, collecting the money for the same, and paid Logan his half, except for the year 1901, which is in controversy in this action. The evidence, we think, also shows that the defendant was in possession of facts which would charge him with notice of the arrangement between Logan and Brennen. In June or July of 1901 Brennen sold to the defendant some two thousand bushels of wheat, which was grown on the Logan and Bren-nen farm, and the defendant contends that he agreed to apply the wheat on the payment of a debt from his son to the mill,

while Brennen testified that he agreed to apply only his half of the wheat to the payment of his son's debt. Tickets to the amount of five hundred dollars were surrendered and applied in that way, and the other tickets for 948 bushels, amounting to $455.04, were by Brennen turned over to Mr. Logan, who presented them for payment, and the defendant refused to take them up, and assigned as a reason that the wheat was to be applied on the debt of Brennen's son. In fact, the defendant had declined to pay Brennen the amount of the Logan tickets before they were turned over to Logan, and gave that as a reason therefor. Logan then commenced this suit, alleging that he had sold and delivered to defendant 948 bushels of wheat at 48 cents per bushel, and that there was still due and unpaid therefor the sum of $455.04. The answer was a general denial. On this state of facts the trial court found for the defendant and taxed the costs to the plaintiff, who appeals to this court.

There is only one question of fact on which the witnesses do not practically agree, and that is as to whether Brennen agreed at the time he sold the wheat that all of it should be applied to the payment of his son's debt; but as the court found generally for the defendant, we will give it the benefit of that finding, and assume that Brennen did agree to apply all of the wheat to the payment of the prior debt of his son. Under these facts the rights of the parties must be determined.

It is. first contended by the defendant that the plaintiff had no legal capacity to sue, because Logan and Brennen were partners, and suit could only be maintained by them as such. An objection that the plaintiff has no legal capac-

ity to sue goes to the authority of the plaintiff to maintain a suit at all, as, for instance, that he is an idiot, a lunatic or a minor, etc., and will not include the objection that the action is not brought in the name of the real party in interest. The record nowhere discloses that the plaintiff was suffering from any legal disability; hence the position is not tenable.

This brings us to a consideration of the legal *status* of Logan and Brennen, and, in presenting this matter, the appellee insists that Logan and Brennen were partners, while the appellant maintains that they were tenants in common. It is sometimes quite difficult to determine whether persons are tenants in common or partners, but, when measured by the rules laid down by the law writers, the case at bar can be classified, leaving no room for reasonable doubt. It has long since been the settled law that persons may be joint owners of real estate or other property and not be partners. In other words, joint ownership does not necessarily mean partnership. In Lindley on Partnerships, vol. 1, bottom of page 122, it is said:

"No partnership necessarily subsists amongst persons to whom property descends, or is given jointly or in common; and, even if several persons agree to buy property to hold jointly or in common, although by the purchase they become co-owners, they do not become partners, unless that also was their intention."

The supreme court of Illinois, in the case of *Ryhiner et al. v. Feickert,* 92 Ill. 305, had occasion to consider the effect of naming two persons as payees in a note, and it was there held that the mere fact that a note ran to Charles and William Feickert, did not, as a matter of law, authorize the

public to assume that they were partners, and that it requir-ed the endorsement of both to effect a legal transfer.

The supreme court of California, in *Quackenbush v. Sawyer,* 54 Cal. 439, stated the rule as follows:

"A mere joint ownership in personal property does not constitute a partnership; nor was a partnership created by an agreement to divide the income of a business carried on by a third party with the joint property of the plaintiff and defendant, and paid to the latter for the joint use of him-self and the plaintiff."

One of the tests of a partnership is: Can either party sell his part of the property or thing in question, and his grantee compel recognition of his rights? If he can, then it is not a partnership, as one cannot purchase the interest of one partner in a business and then compel the other part-ner against his will to continue the business with him. See Kent's Commentaries, vol. 3, star page 25, and vol. 4, star page 368, *et seq.* It cannot reasonably be contended that the grantee of Logan or Brennen, either of the wheat or land, would not have the same rights as his grantor.

There was no express agreement of partnership between Logan and Brennen, and the facts do not justify an infer-ence of partnership. They were joint owners of the land, and each was interested in reaping the fruits of his invest-ment; and, in order to get some returns from the land, Bren-nen farmed the land to wheat, and Logan paid him for his services. Each owned half of the wheat, and neither could sell the half which belonged to the other without his con-sent. This consent, however, Brennen had, and, in selling Logan's half of the wheat, he acted as his agent; and were this a case where the defendant or Logan must suffer on ac-

count of some wrongful act of Brennen, of course the loss would fall on Logan; but that is not the case. The defendant was in possession of such facts and circumstances as to charge it with knowledge of the arrangement between Logan and Brennen, but, even if it were not, the wheat actually belonged to Logan and the defendant did not part with any valuable thing to get it, and it should be compelled to either pay for the wheat or return it, and upon failure so to do, Logan could sue and recover its value. *Goell v. Morse and others,* 126 Mass. 480.

Under the facts in this case, the plaintiff ought to have recovered. The judgment of the lower court is hereby reversed, and judgment is hereby rendered for the plaintiff for $455.04, with interest at 7 per cent thereon since October 15, 1901. Costs taxed to appellee.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.