### RED RIVER VALLEY TRUST CO. v. BOSWELL, Rec., et al.

No. 23673. April 30, 1935.

Rehearing Denied June 25, 1935.

R. T. Stinson and Priscilla W. Utterback, for plaintiff in error.

Davis S. MacDonald and John A. MacDonald, for defendant in error.

PHELPS, J. On May 26, 1926, to secure a $10,000 note, J. R. Goss executed a chattel mortgage to Choctaw Cotton Oil Company covering "70 head of mules, from five to seven years old, mostly black and bay in color, average weight about 1,100 lbs." (together with other personal property not necessary to mention herein) and describing them as "owned entirely by me, being in my possession located about 10 miles south of Boswell, Okla., in Bryan county, Okla., on farm owned or controlled by J. R. Goss." The mortgage was placed of record in Bryan county.

On March 1, 1930, the note not having been paid, replevin action was filed in the district court of Bryan county against J. R. Goss, in which action possession of said mules was sought.

Replevin writ was served and defendant failed to give redelivery bond within 24 hours, but by stipulation bond was later given and the mules remained in the possession of defendant. S. C. Boswell was later appointed receiver for plaintiff, and the litigation was conducted in his name as such receiver. On March 24, 1930, leave having been obtained, the Red River Valley Trust Company filed its petition in intervention, in which it claimed right to possession of said mules under a chattel mortgage given by Goss to it on February 15, 1929, to secure the payment of five notes of $10,-000 each; the property in this mortgage being described as "300 head of mules of various ages, sizes and colors, this mortgage being intended to cover all the mules that I may now own or acquire during the year 1929."

The intervener claimed that its mortgage took precedence over plaintiff's mortgage for the reason that within 30 days prior to the expiration of the three-year period from the date of said mortgage, no affidavit to extend the life of said mortgage had been filed as provided by law. It further pleaded that it had no notice of the existence of said mortgage when its mortgage was given and filed. Plaintiff filed its answer to the interplea, pleading notice on the part of intervener. Defendant Goss made no appearance, and on the issues thus joined between plaintiff and intervener, the cause was tried to a jury. But the court decided the issues as to priority in favor of plaintiff, and submitted to the jury the sole question as to the value of the mules.

The jury returned its verdict, fixing the value of the mules at $4,200. Judgment was rendered in favor of plaintiff, and intervener appeals.

There is apparently no serious contention on the part of the intervener that it is entitled to priority because of a lack of notice of the existence of plaintiff's mortgage at the time the mortgage was taken. Counsel for intervener present and argue their various assignments of error under several different heads or propositions, but in one way or another they all revolve around the one proposition, to wit, that the description of the mortgaged property was indefinite and that the burden was upon the plaintiff to show that the property it seized under the replevin writ was the identical property covered by its mortgage, and this proposition being questioned in the pleadings and in the evidence, that it was error for the court to refuse to submit that question to the jury for its determination.

It appears that defendant owned about 300 head of mules; he had mortgaged 70 head of them to plaintiff, he had mortgaged a number of them to the First National Bank of Bonham, Tex., and he then executed a mortgage to the intervener, describing them as:

"300 head of mules of various ages, sizes and colors, this mortgage being intended to cover all the mules that I may now own or acquire during the year 1929. * * *"

When demand was made on defendant for possession of the mules by plaintiff, he advised plaintiff by wire that intervener would not permit him to surrender them to plaintiff. Plaintiff then sent two of its employees to the farm where the mules were located. They found defendant's son in charge. He told them that the mules were at various places on the farm, but refused to surrender possession, saying he wanted to see Mr. Norris (president of plaintiff company), but that he would assemble the mules, that there were approximately 122 head of mules on the farm.

The replevin writ was then issued, and the employees, with an officer, returned to the farm where the employees of defendant had assembled 105 head of mules, and with a copy of the mortgage in their possession, they selected 70 head from the herd which they thought best fitted the description given in the mortgage. The other mules were later taken by the intervener.

When the evidence was all in, the trial judge said:

"I think the facts are well against the Red River Valley Trust Company and the First National Bank of Bonham, and the only question in the case is the value of these mules."

The trial judge also made findings of fact and conclusions of law, and in doing so used the following language:

"The court finds that the mortgage held by plaintiff covered 70 mules and that the mortgage held by the First National Bank of Bonham, Tex., covered a lesser number than that and that the mortgage held by the Red River Valley Trust Company covered all of the mules and that the defendant, Goss, had amounting to about 300 and also included in this mortgage were the mules mortgaged to the plaintiff, as well as to the First National Bank of Bonham, Tex.

"At the time the mules were seized in replevin the defendant Goss drove into the lot more than enough mules to satisfy the writ and the officer levying the writ was instructed to pick out the mules and 70 mules were selected from the herd that was driven into the pen for that purpose. * * * The testimony shows that the Red River Valley Trust Company had gotten all of the other mules that Goss owned on the farm, and at no time did the Red River Valley Trust Company offer or tender into court the other mules covered by the mortgage. * * *"

From the foregoing we assume the trial court reached its conclusion upon two grounds.

First, that the defendant having given a redelivery bond, he is estopped to deny that the property taken was the property covered by the mortgage, in keeping with the rule laid down in Howard v. First National Bank of Addington, 139 Okla. 58, 281 P. 224, in which in the first paragraph of the syllabus this court used the following language:

"Where, in a suit for possession of personal property under a writ of replevin, the defendant executes and delivers a redelivery bond to the sheriff, and same is accepted and approved by the sheriff, and the property released to the defendant, said bond takes the place of the property as security for plaintiff's debt, and plaintiff is entitled to rely on same, and is not required to pursue the property any further, and the defendant and sureties on the bond are estopped from denying that defendant possessed all the property or the legality of the levy."

To the same effect was our holding in Musgraves v. First National Bank of Addington, 139 Okla. 259, 284 P. 15.

We hereby refer to the authorities cited in these cases in support of the rule that where the redelivery bond is given the defendant and the sureties on his bond are estopped from denying that the defendant possessed "all the property or the legality of the levy." If it be contended that defendant in the instant case is not the one who denies that the property taken under the writ was the same property covered by the mortgage, the answer to that contention is that the record shows the intervener here, at least in a measure, stepped into the shoes of the defendant. The defendant did not defend, but he was called as a witness and he testified that he was not able to make the bond and that the intervener caused the bond to be made for him and indemnified the sureties who signed the bond. Thus, in effect, the bond was made in behalf of and for the benefit of the intervener, and it would, under such circumstances, be bound by the law applicable to the defendant.

Second, that after hearing all the evidence the court was impressed with the equities of the plaintiff; that there was no question but that plaintiff had a mortgage on 70 head of mules, that intervener was claiming and introduced evidence to the effect that some of the mules selected from the herd were not the identical mules covered by the mortgage and therefore plaintiff was not entitled to have them sold to satisfy the mortgage, but at the same time the intervener having taken possession of the balance of the herd, it withheld them from the

sale and thus claimed the right of possession of not only those not covered but taken under the writ and also those covered by the mortgage and not taken under the writ.

In Graves v. Mayberry, 137 Okla. 218, 278 P. 1111, in the first paragraph of the syllabus this court used the following language:

"A replevin action is primarily one for the possession of personal property; yet it is sufficiently flexible to authorize a settlement of all the equities between the parties arising from or growing out of the main controversy. Holmberg v. Will, 52 Okla. 745, 153 P. 832."

In this opinion a number of authorities are cited in support of the above-quoted section of the syllabus and are applicable here. The same rule is followed in Mercantile Trust Co. v. Roland, 143 Okla. 190, 288 P. 300.

We here reiterate that, as a general rule, a suit in replevin is not an equitable action, but when we take this record as a whole, even though we should conclude that there were errors in the trial, yet we readily reach the conclusion that substantial justice was done and that the judgment of the trial court should be, and is hereby, affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and CORN, JJ., concur.