ERWIN F. VETTER AND WESTERN AND SOUTHERN INDEMNITY COMPANY, A CORPORATION, RESPONDENTS, v. PAUL V. BROWNE, APPELLANT. —85 S. W. (2d) 197.

St. Louis Court of Appeals. Opinion filed July 19, 1935.

Respondents' Motion for a Rehearing Overruled September 10, 1935.

Petition for Writ of Certiorari Denied by Supreme Court October 18, 1935.

*N. Murry Edwards* for appellant.

*Erwin F. Vetter* for respondents.

BECKER, J.—This is an action for damages for the loss of an automobile and for the reasonable rental value of the automobile during the time that plaintiff Vetter was deprived of its use. The verdict of the jury was for plaintiffs and from the judgment rendered defendant appeals.

The automobile in question was covered by a policy of fire and theft insurance in the Western and Southern Indemnity Company, and plaintiff Vetter, after the loss, having received $400, the principal sum of the insurance policy, signed a contract subrogating to the Western and Southern Indemnity Company any right of action against any person responsible for the loss to the extent of said $400, and the indemnity company thereafter joined Vetter, the owner of the automobile, in bringing this action.

Plaintiffs' amended petition, upon which the case was tried, alleges that plaintiff Vetter was the owner of a Plymouth automobile, and that the defendant Paul Browne was the owner of an automobile parking station at 7th and Walnut streets in the city of St. Louis, Missouri; that on November 25, 1932, plaintiff Vetter parked his car (of the reasonable value of $600) with defendant by delivering and turning over full possession and control of his said automobile to defendant's agents in charge of and operating said parking lot; that several hours later Vetter made demand upon defendant for his automobile in accordance with his agreement of parking, but that the defendant failed and refused to deliver said automobile to plaintiff Vetter. The petition then alleges that the automobile was recovered on April 14, 1933, at which time its reasonable market value was $150, and that plaintiff Vetter "lost the reasonable rental value during the time he was deprived of its use in the amount of $370," and prays judgment in the sum of $800, together with interest from the date of the loss of the automobile.

Defendant's answer was a general denial coupled with a plea that whatever loss plaintiffs suffered, if any, was caused by plaintiff

Vetter's negligence contributing to the theft of said automobile by negligently leaving or permitting the keys to be left in said automobile.

· Plaintiffs' reply was a general denial.

When plaintiffs' first witness was placed upon the stand, defendant objected to the introduction of any evidence on the ground that plaintiffs' petition did not state a cause of action against defendant because it was not alleged therein that a certificate of ownership for the automobile in question had been issued to either of the plaintiffs before the date of the alleged loss sued for. This objection was overruled and exceptions duly saved.

We need not set out the evidence adduced at the trial, it being sufficient for the purposes of this appeal to state that plaintiffs adduced testimony sufficient to take the case to the jury.

Appellant's first assignment of error is that the trial court erred in submitting plaintiffs' case to the jury because plaintiffs made no proof whatever that a certificate of ownership to the automobile in question had been issued to them, as required by sec. 7774 (c), Rev. St. of Mo. 1929 (Mo. St. Ann., sec. 7774 (c), p. 5194), and that, therefore, no ownership was proven under said section 7774 (c), and any attempted sale of an automobile without compliance therewith was "fraudulent and void," and cites in support thereof Mathes v. Fire Ins. Co. (Mo. App.), 6 S. W. (2d) 66; State v. Cox (Mo. Sup.), 268 S. W. 87; Boyer v. Garner (Mo. App.), 15 S. W. (2d) 893; Isaacson v. Van Gundy (Mo. App.), 48 S. W. (2d) 208. The point is without merit.

Plaintiffs' petition alleges the ownership of the automobile in plaintiff Vetter, and at the trial plaintiff Vetter himself testified that he bought the automobile in November, 1931, but did not offer in evidence a certificate of ownership. However it is apparent from plaintiff's own testimony that the car, when he purchased it, was a new car and not a used or second-hand car. In this situation the provisions of sec. 7774 (c), Rev. St. of Mo. 1929 (Mo. St. Ann., sec. 7774 (c), p. 5194), relied on by appellant in support of this assignment of error, do not apply. A reading of that paragraph (c) of the section discloses that it is intended to apply only in case of sale or transfer of the ownership of a used or second-hand motor vehicle or trailer, and does not apply in the case of the purchase of a new automobile. This is apparent from the language of paragraph (c) of the section itself, which is as follows:

". . . In the event of a sale or transfer of ownership of a motor vehicle or trailer *for which a certificate of ownership has been issued the holder of such certificate* shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the commissioner, with a statement of the liens

or incumbrances on said motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer. The buyer shall then present such certificate, *assigned as aforesaid*, to the commissioner, at the time of making application for the registration of said motor vehicle or trailer. . . . · Four months after this law takes effect and thereafter, it shall be unlawful for any person to buy or sell in this State any motor vehicle or trailer *registered under the laws of this State*, unless, at the time of the delivery thereof, there shall pass between the persons such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle *registered under the laws of this State*, without the assignment of such certificate of ownership, shall be fraudulent and void. In the case of dealers, a separate certificate of ownership, either of such dealer's immediate vendor, or of the dealer himself, shall be required in the case of each motor vehicle in his possession, and the commissioner shall determine the form in which application for such certificate of ownership and assignments shall be made, in case forms differing from those used for individuals are, in his judgment, reasonably required: Provided, however, that no such certificate shall be required in the case of new motor vehicles or trailers sold by manufacturers to dealers. Dealers shall execute and deliver bills of sale in accordance with forms prescribed by the commissioner for all new cars sold by them. On the presentation of a bill of sale, executed in the form prescribed by the commissioner, by a manufacturer or a dealer for a new car sold in this State, a certificate of ownership shall be issued. . . ."

We have examined each of the cases cited by appellant in support of his contention and the facts in each case disclose that the purchase and sale of the automobile which was the subject of the action therein, was a used or second-hand car and therefore properly fell within the purview of sec. 7774 (c) of our statutes. We have not found any case in this State in which the question as to whether or not this paragraph (c) of sec. 7774 applies to the purchase and sale of new automobiles, but the language of the statute is so plain that there can be no doubt that it is intended to apply only to used or second-hand automobiles. Statutes somewhat similar in nature are found in other States and these statutes have been construed to apply only to sales and purchases of used or second-hand automobiles. [See Riggle v. Automobile Finance Co. (Tex.), 277 S. W. 439; Seely v. Carlson (Kas.), 251 Pac. 1077.]

Appellant makes the further contention that the instruction offered by plaintiffs on the measure of damages is erroneous in that among other things it predicates a liability for "the reasonable rental value of said automobile from the time it was delivered to

the defendant, until the time it was recovered, and during the time plaintiff (Vetter) was deprived of its use.'' The point is well taken.

Where an automobile has been converted by another and the vehicle has thereafter been returned and accepted by the owner thereof, the measure of damages is the difference between the value of the car at the time of the conversion and the value of the car at the time of the return, plus the reasonable value for the loss of the use of such vehicle during the period of time that the owner has been deprived thereof. [McFall v. Wells et al. (Mo. App.), 27 S. W. (2d) 497; Bauer v. Fahr et al. (Mo. App.), 282 S. W. 150; Gilwee v. Brewing Co., 195 Mo. App. 487, 193 S. W. 886; Hoffman v. Met. St. Ry. Co., 51 Mo. App. 273; Conley v. K. C. Ry. Co. (Mo. App.), 259 S. W. 153; Brown v. Zorn (Mo. App.), 275 S. W. 572; Davidson v. Ry. Co., 98 Mo. App. 142, 71 S. W. 1069; Jacobson v. Graham Ship-By-Truck (Mo. App.), 61 S. W. (2d) 401.

The rental value of an automobile like, and in the condition of the one converted, is admissible, not as furnishing a measure of damages, but as tending to prove one of the facts proper to be considered in ascertaining the extent of plaintiffs' injury. As was pointed out in Cook v. Motor Car Co., 88 Conn. 590 (see, also, Peters v. Streep, 138 N. Y. Supp. 146), the plaintiff cannot recover the rental value of his car during the period of detention, for such rental value includes a substantial allowance for depreciation and repairs to which the plaintiff's car would not in the meantime have been subjected. So too, the rental value of cars includes a substantial allowance for the overhead expenses and profits of carrying on the business of renting motor cars, and the plaintiff is not engaged in that business; also plaintiff would not be entitled to the rental value of his car less deductions for these items, for, even if he had been engaged in the business of renting motor cars it would not follow without evidence to that effect, that the car would probably have been rented every day or for any given number of days.

''The value of the use is fixed by finding the market value of the use of the property during the period of loss of use. The market rental value of the property is a material and relevant factor in helping to ascertain the value of the loss of use. But rental value will not furnish the measure of damages for loss of use of an automobile. For rental value of an automobile includes necessarily a substantial sum for wear and tear and depreciation. No definite general rule can be laid down except that the award by verdict or judgment should be for fair and reasonable compensation, according to the circumstances of each case. Elements ordinarily essential to such a finding would be the value of the automobile, its market rental value, less the proportion of this rental value which covers wear and tear and depreciation in the use of the automobile, and the period

of necessary deprivation of use." [Hawkins v. Trucking Co., 96 Conn. 337, 114 Atl. 94.] [See, also Webb-North Motor Co. v. Ross (Tex. Civ. App.), 42 S. W. (2d) 1086; Berry, Automobiles (7 Ed.), Vol. 5, sec. 5.235, p. 376.]

For the error noted in the instruction the judgment is reversed and the cause remanded. *Hostetter, P. J.,* and *McCullen, J.,* concur.