**M. B. THOMAS AUTO SALES, Inc., Plaintiff in Error,**

v.

**Howard PICKLE, d/b/a Howard Pickle Motor Company, and R. C. Kaiser, d/b/a Kaiser Kar Company, Defendants in Error.**

**No. 37336.**

Supreme Court of Oklahoma.

Dec. 26, 1956.

Reed & Howe, Geo. W. Reed, Jr., Tulsa, for plaintiff in error.

Gable, Gotwals & Hays, Arthur E. Rubin, Tulsa, for defendant in error R. C. Kaiser.

Dyer, Powers & Gotcher, Tulsa, for defendant in error Howard Pickle.

BLACKBIRD, Justice.

On the 18th day of July, 1955, plaintiff, M. B. Thomas Auto Sales, Inc., a wholesale dealer in new and used automobiles of St. Louis, Missouri, brought six separate actions in replevin to recover six different automobiles of which it alleges it is the owner and entitled to the immediate possession and which are unlawfully held and detained by defendants.

Five of these actions were brought against R. C. Kaiser, doing business as R. C. Kaiser Kar Company, who was at the time in possession of five of the automobiles. Kaiser is a resident of Tulsa, and is a registered new and used car dealer doing business in that city. The sixth action was brought against Howard Pickle of Tulsa, who is also a registered new and used car dealer and doing business in that city.

Some time in the month of June, 1955, S. C. Gibson, a registered new and used car dealer of Bristow, Oklahoma, and doing business both there and at Tulsa, went to St. Louis, Missouri, and entered into a contract with plaintiff to purchase the automobiles in question. The automobiles were to be paid for in cash. Gibson then executed six different drafts, one for the purchase of each automobile, and the automobiles were then delivered to Gibson. Plaintiff did not then have certificates of title to the automobiles. However, it thereafter procured them and attached them to the drafts and forwarded them for collection to the bank on which they were drawn at Bristow, Oklahoma. It was agreed between the parties that title should not pass to Gibson until these drafts were paid. The drafts were presented in due course, and upon presentation, dishonored and returned to plaintiff unpaid; and Gibson has never paid for the automobiles. In the meantime, Gibson sold five of these automobiles to defendant Kaiser for $10,200; $6,944 of this was paid in cash, the balance was credited on a past due indebtedness owed by Gibson to Kaiser. The other automobile was sold to defendant, Pickle, for the sum of $2,292.62; $1,140.92 of this amount was paid in cash and the balance was credited on a past due indebtedness owed by Gibson to Pickle. Gibson thereafter obtained and furnished Oklahoma certificates of title to defendants for the respective automobiles purchased by them.

After the drafts above mentioned were protested and returned unpaid, plaintiff sent one of its salesmen to Bristow, Oklahoma, to collect them. He was unable to do so. He thereafter located the automobiles in question and caused the bringing of these actions in replevin to recover them. Replevin writs were issued and placed in the hands of the sheriff of Tulsa County who served them upon defendants. Defendants failed to give redelivery bonds. The automobiles were then delivered to plaintiff by the sheriff under the writs of replevin and plaintiff took the automobiles to St. Louis, Missouri, and there resold them.

In their separate answers to plaintiff's petition, defendants denied that plaintiff is the owner of the automobiles in question as against them, and affirmatively plead they were innocent purchasers for value of the respective automobiles purchased by them and that plaintiff by its acts and conduct is estopped to assert title thereto as against them.

The cases were consolidated for trial. A jury was waived by all parties, and the case was tried to the court, resulting in a judgment in favor of defendants for the return of their respective automobiles, or, in case a return thereof could not be had, the value thereof at the time of taking, with interest at the rate of six per cent per annum from July 18, 1955, the date of the taking.

Thereafter, and on motion for new trial, the court modified its judgment by render-

ing judgments in favor of defendants and against plaintiff for the cash consideration paid by them for their respective automobiles. Plaintiff appeals and defendants have filed cross-petitions in error.

Plaintiff contends that since the transaction between it and Gibson, for the sale of the automobiles, occurred in St. Louis, Missouri, and the automobiles were delivered and the drafts were signed there, validity of the transaction is to be governed by the laws of Missouri. It was stipulated that the statute of Missouri could be admitted in evidence, and that, insofar as here material, it provides:

"It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with the assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void." V.A.M.S. § 301.210, subd. 4.

It is admitted by all the parties that no assignment of certificate of title was executed by plaintiff to Gibson at the time the automobiles were delivered to him. It is also admitted that the above mentioned drafts were never paid. Plaintiff contends, that, under the above statute, the transaction between it and Gibson relative to the purchase of the automobiles was fraudulent and void, and that Gibson therefore acquired no title to them and consequently could not convey title to defendants.

Since the automobiles in question were new automobiles and had never been registered in Missouri at the time they were delivered to Gibson, it may be doubted whether the above statute is applicable. It would appear from some of the court decisions rendered by the Missouri courts that the above section of the statute has no application to the sale of new automobiles but ap-

plies only to used automobiles. See, in this connection, Pearl v. Interstate Securities Co., 357 Mo. 160, 206 S.W.2d 975; Vetter v. Browne, 231 Mo.App. 1147, 85 S.W.2d 197. We deem it unnecessary however to determine that question in this case. The evidence shows that Gibson was to pay cash to plaintiff for the purchase of automobiles, that title thereto was not to pass until the above mentioned drafts were paid. Since these drafts have never been paid it is clear that Gibson never acquired title to the automobiles; and, if they had remained in his possession, plaintiff undoubtedly could have recovered them from him.

■ Defendants contend however that they are innocent purchasers for value and that plaintiff by its acts and conduct is estopped to assert title against them.

The evidence shows that neither of the defendants had any knowledge of the manner in which Gibson obtained possession of the automobiles from plaintiff, had no knowledge that he had not paid for them, and had no knowledge that plaintiff claimed title to them.

Floyd Coleman, one of plaintiff's salesmen, testified that the sale of the automobiles to Gibson was negotiated by him; that the transaction was to be a cash one; that he knew Gibson was a used automobile dealer at Bristow and Tulsa, Oklahoma, and bought and sold new and used automobiles; and that, prior to that time he had, on different occasions, sold automobiles to Gibson.

Under the above evidence plaintiff knew, through its salesman Coleman, or was charged with the knowledge, that Gibson was not purchasing the automobiles for his own use but that he was purchasing them for resale to others. Yet, despite this knowledge, it delivered the automobiles to Gibson without payment having been made. It thus placed it in Gibson's power to defraud others.

■ We think the evidence in this case is sufficient to establish an estoppel against plaintiff to assert title to the automobiles

in question as against defendants: We have so held under a very similar state of facts in Al's Auto Sales v. Moskowitz, 203 Okl. 611, 224 P.2d 588, 589. We there held:

"An alleged owner of an automobile, who permits a dealer in automobiles to have a car at his sales place under circumstances that indicate authority to sell, is estopped to assert his title against a bona fide purchaser for value and without notice of any defect of title."

We further held:

"Where one of two innocent parties must suffer through the act or negligence of a third person, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong or cause the loss."

In that case it appears that Al's Auto Sales purchased a used automobile from another. The following day the plaintiff sold said automobile to Charles E. Cross. Cross signed a draft payable to Al's Auto Service drawn on a bank in Tulsa, Oklahoma, in the sum of the purchase price paid for the automobile. The draft was presented for payment and was protested. At the time of the sale by said plaintiff, to Cross, it retained the certificate of title to the automobile and attached it to the draft, which was forwarded for payment with instructions to the bank that, when the draft was paid, the certificate of title would become the property of Cross. Thereafter, defendant Moskowitz purchased the automobile in question from Cross. Cross gave him a bill of sale to the automobile. Cross did not then have a certificate of title to the automobile sold Moskowitz and did not furnish him with one, but promised to later. Moskowitz had not received the certificate of title at the date of the trial. Al's Auto Sales thereafter brought an action in replevin against Moskowitz to recover possession of the automobile. The trial court held Moskowitz an innocent purchaser for value, and ren-

dered judgment in his favor and against plaintiff. This court, on appeal, affirmed said judgment and held as above stated. The holding in that case is applicable here.

Plaintiff further contends that under the facts of this case, the doctrine of estoppel may not be invoked by defendants. It contends that the doctrine only applies when an innocent member of the public approaches a new or used car dealer and, relying upon his being a licensed automobile dealer and owning the automobile offered for sale, purchases the automobile and pays the full purchase price thereof. It is asserted that the doctrine does not apply to a purchase by one used car dealer from another used car dealer.

■ We see no reason for making such a distinction. We think the doctrine applies to every purchaser of property who purchases from a fraudulent vendee for a valuable consideration without notice of a defect in the vendee's title. In support of its contention, plaintiff cites: Associates Discount Corp. v. Main Street Motors, Inc., Ohio App., 113 N.E.2d 734, which it states is referred to by this court in Stemmons, Inc., v. Universal C. I. T. Corp., Okl., 301 P.2d 212, 213. In the latter case this court refused to follow the case relied on by plaintiff, and held:

"Authorized automobile dealer's sale of new automobile to licensed used car dealer for resale, buyer having no knowledge of seller's financing arrangements or finance company's chattel mortgage on vehicle, constituted a sale 'in the ordinary course of trade' within the meaning of the statute, 46 O.S.1951 § 93, and finance company was not entitled to possession of property by replevin."

If the above case has any bearing whatever upon the issues here involved it would support the contention of defendants rather than that of the plaintiff.

Plaintiff's final contention is that even though defendants may be considered innocent purchasers for value, they can only be held to be such purchasers to the extent

of the actual cash consideration paid by them for the purchase of their respective automobiles. There are some authorities supporting this contention. Touching this question in 46 Am.Jur., "Sales", sec. 468, it is said:

"The authorities are not in entire accord as to whether a purchaser of chattels who pays partly in cash and partly by the extinguishment of a pre-existing debt is a purchaser for value. According to the weight of authority, however, a subsequent purchaser from a buyer whose title is defective, who pays part of the price in cash and part by the discharge of a pre-existing debt is to be deemed a purchaser for value to the same extent as though he had paid all cash and not merely to the extent of his cash payment. Other cases, however, take the view that such purchaser is to be regarded as a purchaser for value only to the extent of his cash payment. * * *"

In Automobile Equipment Co. v. Motor Bankers' Corporation, 251 Mich. 220, 231 N.W. 559, 560, the Supreme Court of Michigan held that a purchaser of property who cancels a pre-existing debt, as a part of the consideration paid for such property, and pays the balance of the consideration in cash, is an innocent purchaser only to the extent of the cash consideration paid. In discussing the question of estoppel under facts similar to those involved here, the court, in that case, quoted from one of its prior opinions as follows:

" 'The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked, and in this case only protects the mortgagees to the extent of the cash advanced to the mortgagor; they being already liable on the notes contingently as indorsers, and an executory promise, not changing their situation for the worse, not being such a consideration as will bring them within the protection of bona fide mortgagees or purchasers. * * *' "

The court then said:

"Plaintiff cannot be regarded as a purchaser for value as to the amount of the pre-existing debt. It is a purchaser for value for the remainder of the consideration paid and is therefore entitled to protection accordingly. The judgment should be reduced by the amount of the pre-existing debt, $733.-26, and judgment rendered for the remainder, $614.78 with interest."

See, also, Gavin v. Armistead, 57 Ark. 574, 22 S.W. 431.

This court has heretofore held that a purchaser of property from a fraudulent vendee is not an innocent purchaser for value where the only consideration paid by him for the purchase of the property constitutes the cancellation of a pre-existing debt. Wails v. Farrington, 27 Okl. 754, 116 P. 428, 35 L.R.A.,N.S., 1174; Logan v. Oklahoma Mill Co., 14 Okl. 402, 79 P. 103. Since we have so held, it logically follows that where the consideration paid by the purchaser consists in part of the cancellation of a pre-existing debt, and the balance of the purchase price is paid in cash, the purchaser may be held to be an innocent purchaser for value only to the extent of the cash consideration paid.

The trial court in its modified judgment so held and entered judgment in favor of each defendant and against plaintiff for the cash consideration paid by each for the respective automobiles purchased by him.

In their cross-appeal defendants assert that since the actions here involved were for replevin, when the trial court found the issues generally in their favor, the judgment should have been entered in their favor and against plaintiff for return of the automobiles in question, or, in case return thereof could not be had, for the value thereof at the time of taking, together with interest at six per cent per annum from date of the taking as provided by 12 O.S.1951 § 1580. We do not agree. We have theretofore held that a replevin

action is primarily one for the possession of personal property; yet it is sufficiently flexible to authorize a settlement of all of the equities between the parties arising from, or growing out of, the main controversy. Red River Valley Trust Co. v. Boswell, 173 Okl. 96, 44 P.2d 956; Seran v. Parker, 177 Okl. 219, 58 P.2d 581; Perry v. Jenkins Music Co., 182 Okl. 51, 75 P.2d 1147. We are of the opinion that the contentions made by defendants in their cross-appeal cannot be sustained.

In accord with the foregoing, the judgment is affirmed.