JOHN ROBERTSON, AN INDIVIDUAL, DOING BUSINESS AS ROBERTSON GARAGE, APPELLANT, v. THE CENTRAL MANUFACTURERS' MUTUAL INSURANCE COMPANY, A CORPORATION, RESPONDENT.—207 S. W. (2d) 59.

Springfield Court of Appeals.  December 11, 1947.

1170

*Byron Kearby,* Rms. 201-02 Barron Bldg., Popular Bluff, Missouri, attorney for appellant.

*M. W. Henson,* Duncan Building, Popular Bluff, Missouri, attorney for respondent.

1172

VANDEVENTER, J.—This is a suit on an automobile insurance policy. Briefly, plaintiff alleges in his petition that defendant issued the policy on two automobiles, a 1941 DeSoto and a 1941 Chrysler for actual cash value, less $50.00, which amount was deductible from the loss occasioned by each collision or upset. That the reasonable value of the two automobiles was $2300.00 and that on the ——day of January, 1946, while the policy was in force, the said automobiles were damaged by a collision near Lufkin, Texas, in the amount of $1300.00, for which demand had been made and payment refused. It was further alleged that through defendant's willful, wrongful and vexatious refusal to pay, it had become liable to plaintiff for a further sum of $500.00 as a reasonable attorney's fee and $120.00 damages for the vexatious delay in refusing to pay the amount of the loss. Defendant's answer admitted that the plaintiff was doing business under the name of Robertson Garage at a certain location in Butler County, Missouri and also admitted that the defendant was a corporation as alleged in the petition. It denied generally each and every other allegation in the petition.

In Paragraph 3 of the answer, plaintiff specifically denied that the automobiles were damaged by collision near Lufkin, Texas or at any other place on the ——day of January, 1946.

" . . . but defendant states that said Chrysler automobile and said DeSoto automobile mentioned in plaintiff's petition were sold by plaintiff to one John O'Banion of Lufkin, Texas on the 7th day of February, 1946 and that thereafter the plaintiff herein had no right, title or interest in said automobiles, or either of them, and that the

collision which occurred near Lufkin, Texas in which said Chrysler automobile and said DeSoto automobile were damaged as described in plaintiff's petition occurred subsequent to the sale of said automobiles by the plaintiff to the said John O'Banion.''

It further denied that the policy of insurance mentioned in plaintiff's petition was in force as to said automobiles on the date of the collision. Plaintiff's reply was a general denial to the answer.

The evidence, material here, showed that plaintiff was engaged in selling automobiles at Popular Bluff, that defendant had issued an insurance policy covering the two automobiles in question, insuring plaintiff against any loss by collision above $50.00 for each collision. We are not deciding that $50.00 is deductible for each car involved in the collision, but the parties seem to agree on that amount. On the 7th day of February, 1946, one John O'Banion of Lufkin, Texas came to Popular Bluff and agreed to buy from plaintiff six automobiles. O'Banion took two of the automobiles back to Lufkin with him but plaintiff agreed to deliver the other four. O'Banion gave plaintiff a draft on a Lufkin, Texas bank for $6,550.00 and a check for $1,350.00 which total amount was the purchase price of the six automobiles. This draft was, on the 7th day of February, deposited in plaintiff's account in the State Bank of Popular Bluff and attached to it were the six Certificates of Title to the six automobiles, duly assigned by plaintiff to John O'Banion of Lufkin, Texas. The record is not clear as to whether the check for $1350.00 was deposited or cashed but it, with the draft, was transmitted by the State Bank of Popular Bluff to its correspondent in St. Louis on the same day the draft was deposited and was about twelve days later, returned marked ''insufficient funds.'' It was then sent by mail by the Popular Bluff bank to the Lufkin, Texas bank and was returned the second time marked ''payment stopped.'' The bank records show that the draft for $6550.00 was never returned to the Popular Bluff bank and the entire credit given on the 7th of February remained in plaintiff's account.

The record is not clear as to when the automobile started to Lufkin, Texas but it was either on the early morning of the 7th or early morning of the 8th. In any event, the day after the two automobiles left Popular Bluff, they were wrecked about 18 miles northeast of Lufkin, Texas by a collision with another automobile and the total cost of repairing them was $914.00. The plaintiff testified that he was called from Lufkin, Texas and told of the wreck the day after the cars left Popular Bluff, which would be within 48 hours of the time they left, the limit set by the policy for coverage in transportation. The defendant offered no evidence as to the exact time of the wreck. Neither was there any evidence offered as to the exact time when the draft was paid, and the Certificates of Title delivered to the purchaser but the evidence conclusively shows it was some time after the collision. The plaintiff testified that O'Banion talked to him by telephone from

Lufkin, Texas immediately after the collision and informed him he was going to turn the draft and check down, or refuse to honor them, unless plaintiff would pay the amount necessary to repair the auto-. mobiles. Plaintiff agreed to do this and paid the $914.00. The record is not clear how this adjustment was made but there was no dispute but that $914.00 was the amount of damage the cars suffered in the collision and was paid by plaintiff. Upon plaintiff's agreement to pay the amount of the damage to the cars, O'Banion permitted the draft to be paid and plaintiff got the benefit of it. The deposit slip issued to plaintiff when the draft was deposited contains this statement: "All items except cash are credited subject to final payment."

Plaintiff testified that the Certificates of Title for the six cars were attached to the draft so they would be delivered only when the draft was paid.

As we view it, the sole and important question in this cause is: Was plaintiff the owner of the cars at the time of the collision? If he were, then the insurance company is liable.

The law in Missouri relative to the transfer of motor vehicles is that at the time of the sale or transfer of ownership of a motor vehicle, the Certificate of Title issued by the Commissioner of Motor Vehicles must be endorsed by an assignment of the holder thereof in the form printed thereon and prescribed by the Commissioner of Motor Vehicles and unless such certificate is so assigned and delivered at the time, no title, legal or equitable, passes and the selling of the automobile without such assignment is a criminal offense. Sec. 8382, Para. C. Mo. R. S. A. 1939. This has been consistently held in this state by many decisions, commencing with State ex rel. Connecticut Fire Ins. Co. of Hartford, Conn. v. Cox 268 S. W. 87, 306 Mo. 537, 37 A. L. R. 1456, decided in 1924 up to and including the case of Pearl v. Interstate Securities Co. (Mo. App. 198 S. W. (2d) 867, decided December 2nd, 1946. (See many cases digested under title "Automobiles," key number 19, Mo. Lifetime Digest.)

According to the undisputed testimony in this case, these two automobiles had not been delivered to the purchaser at Lufkin, Texas and neither had the Certificates of Title been delivered to him unless the State Bank of Popular Bluff was the agent of O'Banion, and delivery to the bank was delivery to O'Banion. The bank was not the agent of O'Banion but was the agent of plaintiff. Bank of Popular Bluff v. Millspaugh (Mo. App.) 275 S. W. 579.

"Checks and drafts not drawn in favor of the depository bank, deposited by or for the owner in a bank other than the drawee, in the absence of a contrary showing, are presumed to have been deposited for collection, and under such circumstances the bank becomes an agent, and the title remains in the depositor, though he is given credit on his passbook and is permitted to draw against the deposit." (Zollman on Banking, Vol. 8, P. 257, Sec. 5472.)

State ex rel. Percy v. Cox 325 Mo. 938, 30 S. W. (2d) 46. Brigance, v. Bank of Cooter (Mo. App.) 200 S. W. 668. Mudd v. Farmers & Merchants Bank of Hunnewell 162 S. W. 314, 175 Mo. App. 398.

We have been unable to find any case reported where Certificates of Title were attached to sight drafts and deposited in banks, but there are many cases where bills of lading and other documents have been so attached and the purpose of such attaching is that they will not be delivered until the draft is paid.

The courts have gone so far as to hold that they will take judicial notice of the procedure of persons depositing drafts and attaching thereto bills of lading:

"The custom of attaching bills of lading to drafts, and thus passing the drafts along for collection, has become so universal that the court must take judicial notice of the procedure. . . . After all is said and done, the bill of lading is nothing more nor less than a bill of sale, and is attached to the draft as a matter of convenience in the transaction of business, and in order that the bill of lading, which is the evidence of the title, will not be delivered before the draft is paid." (Zollman on Banking, Vol. 8, Sec. 5505, P. 284.)

Vickers v. Machinery Warehouse & Sales, 191 Pac. 869, 111 Wash. 576, Dubuque Fruit Co. v. C. C. Emmerson & Co. 206 N. W. 672, 201 Iowa 129. In principle, there could be no difference between attaching a bill of lading or a Certificate of Title to a motor vehicle. Each is evidence of title.

There can be no question but what the Popular Bluff Bank was the agent of plaintiff. See 9 C. J. S. Page 480, Sec. 224, where it is stated that a bank under such conditions is the agent of the depositor and says:

"Thus where a draft is accompanied by a bill of lading or other document to be surrendered when the draft is paid, the bank holding the draft for the purpose of collection is an agent rather than the owner of the draft. In such case it is agent of the depositor and not of the drawee of the draft."

In 7 Am. Juris. Page 481, Sec. 664, it is stated: . .

"However, a bank which receives a sight draft for collection should not surrender an accompanying bill of lading until the draft has been paid, and a bill of lading made deliverable to the consignor, or his order and accompanying a time draft must be retained by a collecting bank after acceptance of the draft to secure its payment. A bank receiving a sight draft for collection with bill of lading attached does not, in the absence of express authority to that effect, have the right to deliver the bill of lading conditionally to the consignee to enable him to inspect the goods covered by the bill of lading."

There can be no question but what the State Bank of Popular Bluff was the agent of the plaintiff and as such agent held the unpaid draft and Certificates of Title. Under these circumstances they had not

been delivered to O'Banion and the title had not passed. Therefore, the insurance company was liable to the plaintiff for the amount of the loss, less deductions provided for in the policy.

Neither plaintiff nor defendant asked for a findings of fact or conclusions of law and we do not know upon what theory the court found for defendant. In its brief, (although as a defense it should have been specially pleaded, Civil Code of Mo. Secs. 39 et seq.) defendant asserts that it was not liable because of the provision of the policy which excludes coverage from "loss or damage to any automobile while such automobile is being conveyed in or upon any automobile, trailor or semi-trailor," but there is quite a distinction between one automobile propelling itself and pulling another and an automobile being conveyed "in or upon any automobile, trailor or semi-trailor."

Under the general rule that insurance contracts must be construed strictly as against the company who writes and sells them and liberally as to the insured, who buys them, we must disagree with this contention. Neither were these automobiles sold under conditional sales contract, which avoids liability under the policy. This was not a conditional sales contract. Without a proper assignment, the would-be purchaser has no legal or equitable titles and is not entitled to possession. Personal Finance Co. v. Lewis Inv. Co. (Mo. App.) 138 S. W. (2d) 655, Muzenich v. McCain (Mo. App.) 274 S. W. 888. It was an agreement to sell the two automobiles in question, the automobiles to be delivered at Lufkin, Texas and the Certificates of Title to be also delivered there at the time the draft was paid. As far as the two cars involved in this controversy are concerned, they were not delivered at the time of the collision and neither were the Certificates of Title. Therefore the title was still in the plaintiff and the defendant should make good the loss occasioned by the collision. We believe the trial court erred in rendering judgment for defendant, that the judgment should have been rendered for plaintiff for the amount of his damage, less the amount deductible. The judgment of the trial court is therefore reversed with directions to enter judgment for plaintiff and to hear further testimony as to whether defendant would be liable for an attorney's fee and a penalty for vexatious delay under the provisions of Sec. 6040, Mo. R. S. A. 1939. It is so ordered. *Fulbright, P. J.*, not sitting. *Blair, J.*, concurs.