**James A. FERM, Plaintiff-Respondent,**

**v.**

**MILLER PONTIAC COMPANY, a corporation, Defendant-Appellant.**

**No. 24431.**

Kansas City Court of Appeals.

Missouri.

June 6, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 3, 1966.

Application to Transfer Denied Nov. 14, 1966.

Donald L. Mason, Mason, Gant & Moran, Kansas City, for appellant.

Thomas J. Allen, Kansas City, for respondent.

SPERRY, Commissioner.

This is a suit for damages, based on fraud and deceit, failure to deliver title, in the sale of an automobile to plaintiff by defendant. Trial to a jury resulted in a verdict and judgment for plaintiff in the sum of $2050.27 for actual damages, and for punitive damages in the sum of $3000.00. Defendant appealed.

Plaintiff's petition is denominated: "Petition for Damages for Fraud, Failure to Deliver Title". He pleaded, in part, as follows:

"3. That defendant, its agents, servants or employees, wilfully, fraudulently, falsely and maliciously represented to plaintiff either expressly or by implication that defendant was the owner of said automobile and had good title thereto, when in truth and in fact defendant did not own said automobile or have a title thereto".

He further pleaded that plaintiff, relying upon such representations, paid to defendant $695.00 by trade and in cash, and executed his note to Associated Discount Corporation in the sum of $2653.00, upon which note plaintiff paid a total sum of $1355.27, making a total sum paid on the agreed purchase price of $2050.27. He prayed judgment for that sum, and for punitive damages in the sum of $5000.00.

At the conclusion of plaintiff's evidence defendant moved for directed verdict, which was denied. It refused to offer any evidence. We will accept as true all of plaintiff's evidence and draw from it every reasonable inference which tends to support his right to recover. Meyer v. Brown, 312 S.W.2d 158, 160 (Mo.App.).

Defendant filed answer wherein the sale of the automobile to plaintiff for the sum of $2695.00, the down payment by him of $695.00, and his execution of a note and chattel mortgage in the sum of $2653.50 were admitted. Defendant states the facts in evidence as follows: In the period between June 12, 1962 and June 19, 1962, plaintiff visited the used car lot of defendant and viewed a used 1960 Pontiac Bonneville Convertible, which he was desirous of purchasing. On June 19, 1962, plaintiff returned, the second time, to the defendant's place of business and agreed with defendant's salesman as to the particulars concerning the transaction. Plaintiff and defendant's salesman agreed as to the purchase price of the automobile, and the trade-in value of a 1951 Cadillac and a 1953 Ford, which plaintiff turned over to defendant and which constituted a portion of the down payment on the car which plaintiff was purchasing. It was also agreed by plaintiff and defendant's salesman, on June 19, 1962, that the balance of the down payment, in the amount of $200.00, would be paid $100.00 on June 23, 1962, and $100.00 on June 30, 1962. It was further agreed by them that defendant would deliver title to the purchased motor vehicle as soon as plaintiff paid the balance of the down payment in cash. On June 19, 1962, plaintiff turned over possession of the two trade-in automobiles to defendant, took possession of the used car which he was purchasing, and received a copy of the purchase order.

On June 23, 1962, and again on June 30, 1962, plaintiff remitted to defendant $100.00 cash payments which, together, constituted the balance of the down payment, and said cash payments were receipted. On making the last portion of the down payment, on June 30, 1962, plaintiff requested the title and was advised that it would be processed and forwarded to him.

On July 9, 1962, plaintiff received a registered mail envelope from defendant, which envelope contained an Application for Title to the purchased automobile and a copy of the invoice, but not the assigned title. About a month later, plaintiff returned to defendant's car lot and talked with Earl Miller (who was an agent of defendant) and advised him that he had not

received the assigned title to the purchased automobile, but only the application for title. In addition, plaintiff contacted defendant, both personally and by telephone, and complained about not having received title and requesting that the title be furnished to him. On some of these occasions he was told by Earl Miller and the secretaries in the office that the title had been mailed to him. Plaintiff never received the title.

Plaintiff kept the purchased automobile and continued to drive it for about six months. He then parked it and did not thereafter drive it. Plaintiff continued to make the monthly payments on the car to the finance company, who had purchased the note and mortgage from defendant, until and including May, 1963, when he notified both defendant and the finance company that he would make no further payments until he received title. In August, 1963, plaintiff still had possession of the involved automobile when it was replevined by the finance company by reason of plaintiff's refusal to make further monthly payments.

Plaintiff's evidence also disclosed that a representation was made to him by defendant through its salesman, on the lot, that defendant owned the 1960 Pontiac, and that plaintiff, relying on that representation, later purchased the car; that, later, Miller stated that defendant had no title, and that it would have to be processed through the finance company; that the person signing the certificate of vendor was C. J. Mecum, the secretary who handled the matter for Miller, and who, later, was unavailable for her testimony concerning the matter; that she had disappeared; that Miller sold the note to Associated Discount Corporation the same day as the sale.

Plaintiff's main instruction (MAI 23.05) required the jury to find:

"*First*, Defendant represented to plaintiff that defendant had good and merchantible title to the automobile in question, intending that plaintiff rely upon

such representation in purchasing the motor vehicle, and

"*Second*, the representation was false, and

"*Third*, Defendant knew or should have known said representation was false, and

"*Fourth*, the representation was material to the purchase by plaintiff, of the motor vehicle, and

"*Fifth*, plaintiff relied upon the representation in making the purchase, and

"*Sixth*, As a direct result of such representation, the plaintiff was damaged".

This instruction is not criticized by defendant, at whose request its converse was given by the court. Meyer v. Brown, supra.

The jury found the facts required to be found under the instruction. Plaintiff testified to the effect that defendant's salesman, Sturges, represented to him that defendant had title to the automobile which he showed and priced to him, and which plaintiff agreed to purchase. Plaintiff went to the regular place of business of a dealer in automobiles where he told defendant's salesman that he wanted to buy a used car. He was shown the car that he bought. He inspected it twice before signing a contract to buy, wherein the terms of the purchase were stated. He was told that, when the down payment was finally made and notes for the balance of payment executed, he would be given title to the car. Both parties had in mind the Missouri statutory certificate of title. He was thereby led to believe that defendant owned the car and had title to it. It was tantamount to a direct statement to that effect. Defendant's salesman knew that defendant had no title and failed to so inform plaintiff. Feeney v. Cook, 242 S.W.2d 524, 529 (Mo.). It is unlawful in Missouri to sell a Missouri registered car for which one has no Missouri title; and such title must, by law, be assigned and delivered to the purchaser at the time the sale is made. Sec. 301.210

RSMo 1959. Later, when the contract was completed, plaintiff was told that the title would have to be processed and would be mailed to him. He was finally told that defendant had no title but that it must be processed through the finance company. Finally, he received through the mail in lieu of a title, an *application* for title, together with a statement of the terms of the sales contract. This paper was worthless to plaintiff, he being unable to get insurance or a license to operate the car. He, therefore, garaged the car. In the meantime, he kept asking for a title and received none. Eventually, after having paid a total of $2050.27, he ceased making payments and told defendant that he would make no more until he received title. The finance company, to whom defendant had sold the note and mortgage, replevined the car. Thereby, plaintiff lost every penny that he had invested in it. This cause of action accrued when plaintiff completed his down payment on an automobile for which defendant knew it had no title. He could have sued at that time and would have been entitled to recover for the amount paid down, plus punitive damages. Defendant and its agents well knew that defendant had no title to the car, from the very first day that it offered to sell it to plaintiff. Its conduct amounted to fraudulent and intentional concealment of a known and material fact which, if it had been made known to plaintiff would have prevented his being victimized.

■ Defendant urges here, as it did below in a motion to require election of remedies, that plaintiff is seeking a return of money paid but has failed to tender back the automobile as a condition precedent to his right of rescission. Plaintiff does not seek rescission. He sued in fraud and deceit. He sought punitive damages in addition to actual damages. This case is in no wise similar, on its facts, to that of Riss & Co. Inc., v. Wallace, 239 Mo.App. 979, 195 S.W.2d 881, cited and relied on by defendant. There, the parties made a written contract for one to sell and the other to buy certain trucks, the final sale actually to take place in the future, at which time the certificates of title were to be delivered to the buyer. Here, the evidence is that plaintiff agreed to buy and defendant agreed to deliver certificate of title at the time the final down payment was made. While plaintiff prayed for actual damages in the amount he paid on the purchase price of the car, (although he may have been entitled to more), he pleaded, proved and submitted a cause of action based on fraudulent misrepresentation.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

HOWARD and BLAIR, JJ., concur.

CROSS, P. J., not participating.