Mary Lue Wade BIVINS and Reliance B.
Wade, Administratrix of the Estate of
Stanley K. Wade, Deceased, Respondents,

v.

ACE WRECKING & EXCAVATING COM-
PANY, Inc., Bobby Lou Mc-
Cormick, Respondents,
and
State Automobile and Casualty Underwriters,
Appellant.

No. 51931.

Supreme Court of Missouri,
Division No. 1.

Nov. 14, 1966.

Motion for Rehearing or for Transfer to
Court En Banc Denied and Opinion
Modified on Court's Own Motion
Dec. 12, 1966.

E. E. Thompson, Thos. J. Conway, Jr.,
Edgar S. Carroll, Kansas City, William
Harrison Norton, North Kansas City, Pop-
ham, Thompson, Popham, Trusty & Con-
way, Kansas City, of counsel, for respond-
ents Mary Lue Wade Bivins and Reliance
B. Wade, Adm'x of Estate of Stanley K.
Wade, deceased.

William H. Sanders, Dean F. Arnold,
James Borthwick, Kansas City, Caldwell,
Blackwell, Sanders & Matheny, Kansas
City, of counsel, for appellant, State Auto.
& Cas. Underwriters.

HOUSER, Commissioner.

Plaintiffs recovered a judgment against
Ace Wrecking & Excavating Company and
its truck driver for $18,750 damages for
the death of their son who was killed in
a collision involving a tractor-trailer rig
operated by Ace. The judgment was not

satisfied. This is an action in equity under §§ 379.195 and 379.200, RSMo 1959, V.A. M.S., against Ace, its driver and its insurance carrier to reach and apply to the satisfaction of the judgment the proceeds of the insurance policy. The court rendered judgment for plaintiffs for $18,750, plus interest, costs, and attorneys' fees in the sum of $1,875. The insurer has appealed. The amount in controversy is the full amount of the judgment, hence this Court has jurisdiction.

The general question is whether the insurance policy covered the tractor-trailer rig Ace was operating at the time of the fatal collision. That rig was not owned by Ace. It was rented for that particular trip, and of course was not described in Ace's policy. Two trucks, neither of which was involved in the collision, were described in the policy. One of them was a 1953 White single-chassis tandem truck with a dump-type bed 14 feet long, 7 feet wide, with sideboards 3 feet high. It weighed 18,000 pounds, and had a capacity of 12 tons. It was used regularly and frequently in Ace's business, in hauling material taken out of wrecking jobs to Ace's yard and making deliveries to customers, both out on the highways and in the city. When acquired in 1961 it was licensed for local use, which permitted operation in Kansas City and within a radius of 25 miles of the city. That same "local" classification was purchased for the truck in 1962, the year of the accident. This accident occurred in the course of a trip to deliver a load of lumber from Kansas City to a farm near Winston, Missouri, which is approximately 40 or 50 miles distant from the city. If the insured truck had been in operating condition it would have been used to haul this load of lumber on this trip but a day or two before the trip was made the insured truck broke down and became completely inoperable. Ace's president then rented a truck from a business firm next door to Ace's place of business. He wanted "just anything that would haul the load," and did not specify whether he wanted a tractor-trailer rig or a dump truck. He did not care which. The rig that was rented consisted of a Ford tractor and a flat bed trailer 8 feet wide and 28 or 30 feet long. On it Ace placed a large load of lumber of varying lengths, widths and sizes, stacked 3 or 4 feet high and extending 3 or 4 feet back from the rear of the trailer.

The narrow, decisive question is whether this rented rig is covered under provision IV a (3) of Ace's policy insuring *temporary substitute automobiles* not owned by insured "while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction."

Insurer claims that the use of the tractor-trailer rig for this trip was not in fact a substitute for the normal use of the insured dump truck; that plaintiffs failed to show that the normal use of the dump truck involved transportation of lumber in the quantities and at the distances involved in this case, i. e., loads 30 feet long carried 40 to 50 miles from Kansas City; that local licensing for a 25-mile radius shows that the dump truck was not normally used outside that area. Insurer also claims that the use was different because the rig used consisted of two units requiring connection and interworking of separate mechanisms on each unit, thus constituting a greater hazard or risk, a problem not found in the case of a single chassis such as the dump truck. Insurer points to evidence indicating that the dump truck could not have carried the load that was being carried by the tractor-trailer rig; that the latter would carry about twice as much lumber as the dump truck, and that Ace hired *two* tractor-trailer rigs to complete the delivery of the lumber to the farm near Winston.

The fact that the dump truck was licensed for a 25-mile radius does not necessarily demonstrate that it was not normally used occasionally outside that area when

necessary to make deliveries to customers. The distance to the farm, 40 or 50 miles, is not so great as to require us to declare as a matter of law that the trip was not a normal use of the dump truck. If the insurer intended that its liability be restricted to an area of less than 50 miles it should have so provided in the policy. There is no such restriction in provision IV a (3). That the power and hauling units of the rig were separate is of no significance in considering the question whether the rig was a substitute "automobile." Provision IV a (3) does not limit the substitute "automobile" to single-chassis vehicles. Whether the rented rig could carry more lumber than the dump truck, or carry it more efficiently or adequately, are strictly subordinate considerations. It is the *use,* not the capacity, of the vehicle that is important. The fact that Ace rented a second tractor-trailer unit to complete the delivery does not bear on the question whether the rig in question was a temporary substitute vehicle.

■ Plaintiffs' evidence was sufficient to show that the tractor-trailer rig was a "temporary substitute automobile" temporarily used as a substitute for the insured "automobile" which was withdrawn from normal use because it was broken down. In order to establish their claim plaintiffs were not required to introduce detailed evidence showing that in the past Ace had normally carried loads of this size and makeup on trips of this or comparable number of miles. The insured dump truck was used when Ace made a delivery to customers and was used "to go out on the highway sometimes." Ace's driver, for the three months prior to this accident, had driven the dump truck "all over" Jackson and Clay Counties numerous times. If the dump truck had not broken down it would have been used "to deliver this lumber up into the country." The dump truck could haul a load of 12 tons, 24,000 pounds, which was more than the weight of the lumber loaded onto the tractor-trailer rig. When loading the dump truck to capacity Ace's employees would stack the lumber up to the cab protector and then lay it across the front, stacking it two or three feet high above the cab protector and "boom it down" by wrapping chains around it. Lumber 20 feet long could be loaded inside the bed. Lumber can extend to the rear of the last axle a distance of 15 feet and could also be stacked forward a distance of 5 feet in front of the front bumper. A 28-foot load, 12 feet high and 7 feet wide, could be put on the dump truck.

■ The "normal use" of the dump truck was that of delivery of lumber to customers. It could not be used for that purpose on this trip because it broke down a day or two before the trip was to be made. Another outfit was temporarily rented to accomplish the purpose which the dump truck could and would have accomplished if it had not become inoperable. The use of the rented rig was that of delivering lumber to a customer. This was a temporary substitute use within the meaning of paragraph IV a (3) of the policy. The tractor-trailer was covered.

No error appearing the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HENLEY and HYDE, JJ., and STORCKMAN, Alt. J., concur.

HOLMAN, P. J., not sitting.