EQUITY MUTUAL INSURANCE
COMPANY, Respondent,

v.

William E. CRESON, Martha Wolken,
Darla Crol, Karen Sue Richter, Darlene
Joan Rackers, Columbia Mutual Casu-
alty Insurance Company and Automo-
bile Club Inter-Insurance Exchange,
Appellants.

No. WD 38933.

Missouri Court of Appeals,
Western District.

Sept. 29, 1987.

Jeffrey O. Parshall, Columbia, for appel-
lants; Knight, Ford, Wright, Atwill, Pars-
hall & Baker, of counsel.

Douglas L. Van Camp, Kelly Pool and
Michael G. Berry, Jefferson City, for re-
spondent; Hendren and Andrae, of counsel.

Before SHANGLER, P.J., and
PRITCHARD and MANFORD, JJ.

PRITCHARD, Judge.

In this declaratory judgment action, the
issue is whether a 1963 Ford was a replace-
ment automobile to a 1973 Mercury de-
scribed in a policy issued to William E.
Creson by respondent, which Mercury Cre-
son never had titled in his name. Respon-
dent was successful in the trial court in
obtaining a declaration that no insurance
coverage existed on the Ford which was
demolished in a one-vehicle accident on Au-
gust 27, 1983, in which appellants, Crol,
Richter and Rackers, were passengers and
were injured.

The facts are these: On November 11,
1982, Creson paid Larry Stevens and his
wife, Estilita, $200 for the 1973 Mercury.
Estilita signed the title and delivered it to
Creson, who took possession of the vehicle,
but he never made any attempt to obtain a
title to it, saying that "the car was unin-
spectable". He did, however, drive the car
on the highways from November 11, 1982
to sometime in August, 1983, in its original
condition. On August 7, 1983, Creson pur-
chased a 1963 Ford Galaxy, and thereafter,
the 1973 Mercury was parked in his yard
and not used except for driving it once
when the family moved to Taos, Missouri
from Jefferson City, a distance of about 8
miles, which was accomplished without inci-
dent.

Quite apparently when Creson purchased
the 1973 Mercury, although Estilita signed
the title, she did not then acknowledge her
signature before a notary public. It rather
conclusively appears that Estilita's signa-
ture was acknowledged before a notary
public in a transfer to Robert Sayers on
November 23, 1983, as shown by a barely
legible photocopy of the assignment con-
tained in the legal file. This was about the
time Robert Sayers purchased the 1973
Mercury from Creson. Creson never did
insert his name as purchaser from Estilita,
but Sayers was shown thereon as the pur-

chaser from her, and he later had a title issued in his name, and still later, he sold the car to a Herbert Mahon.

Creson made application to respondent for insurance coverage on the Mercury through the Fred Vogel Insurance Agency in Jefferson City on August 5, 1983. The policy was to replace an earlier policy issued by American Manufacturers, a Federal Kemper Company, through the Vogel Agency on April 4, 1983, because respondent's premium was lower. Ms. Hurst of the Vogel Agency assumed that Creson owned the Mercury because Federal Kemper had issued a policy on it in April.

On August 7, 1983, Creson purchased a 1963 Ford from Charles Gue for $300, and properly obtained a Missouri title on it. At no time, however, did he inform respondent or the Vogel Agency of this purchase or a desire to insure it as a replacement automobile. On August 27, 1983, Creson gave Martha Wolken permission to drive the 1963 Ford on which date the accident occurred injuring the above named passengers. As of September 29, 1983, the Vogel Agency had not been informed of the accident nor of Creson's ownership of the 1963 Ford. On September 2, 1983, the Vogel Agency was informed that Creson had purchased a 1978 Ford Fairmont, and respondent's policy on it was issued September 7, 1983, with an effective date of August 5, 1983, and there was no mention made of the recent purchase of and accident with the 1963 Ford. According to Creson, the 1978 Ford Fairmont was purchased to replace the 1963 Ford.

The issue turns on whether Creson acquired an insurable interest in the 1973 Mercury at the time he purchased it from Estilita Stevens. It is clear from the evidence that Creson did not at that time (or ever) procure from Estilita a properly executed assignment of her title in his name. She did not then acknowledge her signature on the title transfer before a notary public as prescribed by the form. Indeed, her signature was not acknowledged prior to the sale of the vehicle to Sayers, which was long after the accident in question occurred. Creson's name was never insert-

ed on the assignment of title. He held the title from the time of his purchase from Estilita until he sold the 1973 Mercury to Sayers, and up to sometime in August, 1983, he drove the vehicle on the highways of Missouri without a certificate of title.

Under the strict construction of § 301.210, RSMo 1978, under these facts, Creson never did acquire an ownership in the 1973 Mercury so as to give him an insurable interest therein. As noted, Estilita did not acknowledge her signature before a notary public, and Creson's name as buyer. Section 301.210 requires that on sale or transfer of a motor vehicle, the holder of the certificate of ownership shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the director of revenue, and deliver it to the buyer at the time of the delivery to him of the motor vehicle. The statute goes on in paragraph 4, "It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void." Courts in this state have consistently held that a properly completed and *acknowledged* assignment by the seller be delivered to the buyer. *Faygal v. Shelter Ins. Co.*, 689 S.W.2d 724, 726[2] (Mo.App. 1985); *State Farm Mutual Auto. Ins. Co. v. MFA Mut. Ins. Co.*, 485 S.W.2d 397, 400–401 (Mo. banc 1972), and cases cited in footnote 9 at page 401. It was said in the *State Farm* case at p. 401 that even though § 301.210 does not specify that there be an acknowledgment of the assignment, it has been ruled that the statute is broad enough to authorize the director to require such an acknowledgment "and that an unacknowledged assignment is insufficient to vest title or ownership in the purported buyer." In the *Faygal* case, and cases cited at page 727[6, 7], it was noted that without a valid certificate of title,

there was no insurable interest in the truck. See also *Case v. Universal Underwriters Ins. Co.,* 534 S.W.2d 635, 638[2] (Mo.App.1976) [holding that although an assignment of title in violation of § 301.210 was fraudulent and void, coverage was extended to the driver of a Corvair under his employer's garage liability policy as a permissive user, following *Greer v. Zurich Insurance Company,* 441 S.W.2d 15, 23 (Mo.1969); *Sabella v. American Indemnity Company,* 372 S.W.2d 36, 40 (Mo. banc 1963); *Haynes v. Linder,* 323 S.W.2d 505, 512[12] (Mo.App.1959)]. Since Creson acquired no insurable interest in the 1973 Mercury, respondent's policy issued thereon was not legally binding. Thus, there was no existing insured vehicle which the 1963 Ford could have replaced, even though the accident occurred within the 30–day period after the Ford was purchased that Creson could have notified respondent (but did not) that it replaced the Mercury.

Appellants cite and rely upon *Manchester Ins. & Ind. Co. v. State Farm Mut. Auto. Ins. Co.,* 460 S.W.2d 305 (Mo.App. 1970). In that case one Cash purchased a 1962 Chrysler from Drier Motor Company, and died in it three days later when it overturned. The issue was whether it was a replacement vehicle to one insured by Cash with Manchester, that issue turning on whether Wilson, its former owner, had assigned the title to Drier, and whether Drier assigned the title as dealer to Cash. The title certificate could not be found, its absence being explained, and therefore it was held that parol evidence of both assignments was properly received establishing that proper assignments by both Wilson and Drier had been made, thus the Chrysler was in fact a replacement automobile which Manchester insured. That case is of no help to appellants as it did not involve an insufficient assignment of title as is the case here.

Respondent requested the trial court to allow it to tender the premium back to the Cresons, and asks here that it be ordered to do so.

The judgment is affirmed, but the case is remanded with directions that respondent be ordered to tender any premium on the policy to William E. and Virginia Creson.

All concur.