AMERICAN ECONOMY INSURANCE COMPANY and American States Insurance Company, Plaintiffs–Respondents,

v.

Iris M. PAUL and Joseph D. Duncan, Jr., Defendants–Appellants.

No. 64177.

Missouri Court of Appeals, Eastern District, Division One.

Jan. 25, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 9, 1994.

Application to Transfer Denied April 26, 1994.

Stephen F. Meyerkord, Jonathan E. Fortman, Casey & Meyerkord, St. Louis, for defendants-appellants.

Wuestling, James & DeVoto, William F. James, St. Louis, for plaintiffs-respondents.

CRANDALL, Presiding Judge.

Defendant, Iris M. Paul, brought an action for the wrongful death of her daughter, Tina Marie Paul, who was a passenger in a vehicle involved in an accident on July 9, 1989. Defendant, Joseph D. Duncan, Jr., brought an action for the wrongful deaths of his parents, Becky M. Paul and Joseph D. Duncan, also passengers in the same vehicle. Plaintiffs, American Economy Insurance Company and American States Insurance Company, then brought a declaratory judgment action with regard to whether an automobile liability policy and an umbrella policy provided coverage to the driver of the vehicle at the time of the

accident. The trial court, in a court-tried case, entered judgment in favor of plaintiffs, holding that there was no obligation under the insurance policies to provide coverage to the driver. We reverse and remand.

The present declaratory judgment action was submitted to the trial court on a set of stipulated facts and deposition testimony. The record established that on July 9, 1989, Kevin Hafley (Hafley), deceased, was driving a 1979 Dodge automobile (vehicle) when it was involved in a collision with another vehicle on Highway 67 in Farmington, Missouri. Passengers in the vehicle at the time of the accident were Tina Marie Paul, deceased; Joseph D. Duncan, deceased; and Becky M. Paul, deceased. Iris M. Paul, the mother of Tina Marie Paul, and Joseph Donald Duncan, Jr., the minor son of Becky M. Paul and Joseph D. Duncan, brought wrongful death actions against M. Jane Matoesian, defendant ad litem for Hafley and Daniel A. Raniere, defendant ad litem for Louis Willis, deceased.

Hafley purchased the vehicle involved in the accident from Robin Lawler (seller). The seller signed the back of the title, but did not fill in the name and address of the purchaser. When a factual issue arose as to whether the seller had appeared before a notary public at the time she signed the title, a jury was empaneled and determined that the seller had not signed the title before a notary.

Hafley's mother, Frances B. Anderson (mother), had the title notarized some time after Hafley purchased the vehicle. Hafley applied for title to the vehicle on June 29, 1989, in his and mother's names; and the title was issued on July 25, 1989, in their names. Mother contributed no money toward the purchase of the vehicle, placing her name on the title solely as an accommodation to Hafley.

At all times pertinent to the litigation, two insurance policies were in effect. American Economy Insurance Company had in effect a personal automobile policy, with the named insureds being Douglas H. Anderson and Frances B. Anderson. American States Insurance Company had in effect an executive umbrella policy, with the named insured being Douglas H. Anderson but with the policy definition of "covered person" including his spouse, Frances B. Anderson. The automobile policy with American Economy Insurance Company defined "covered auto" as "[a]ny vehicle of which you acquire ownership during the policy period. . . ." The vehicle involved in the accident was not listed on either of the above-mentioned insurance policies or on any other policy at the time the accident occurred.

In the underlying wrongful death actions, a controversy arose as to whether the insurance policies provided coverage to Hafley, who was driving the vehicle at the time of the accident. Plaintiffs brought the present action, seeking a declaration that their policies were not in effect at the time of the accident. The trial court entered judgment in favor of plaintiffs, finding that the insurance policies did not provide coverage because mother did not "acquire ownership" of the vehicle and thus did not have an insurable interest therein.

 The salient issue on appeal is whether the trial court erred in finding that as a result of the seller's failure to sign the title before a notary public in conformity with § 301.210, RSMo (1986), title did not pass to mother and she did not acquire an insurable interest in the vehicle. Plaintiffs rely on *State Farm Mut. Auto Ins. Co. v. MFA Mut. Ins. Co.*, 485 S.W.2d 397 (Mo. banc 1972) to support their position that under § 301.210 the purported sale of the vehicle herein was void and passed no title. In *State Farm*, the insurance policy provided automatic coverage for "any other automobile of which the named insured or spouse acquires ownership. . . ." *Id.* at 398. The Supreme Court of Missouri construed the policy terms, "acquires ownership," in conjunction with the provisions of § 301.210 and required that the seller assign the vehicle before a notary public. *Id.* at 401. The court held that

> [E]ven though accompanied by full payment and physical delivery of possession, the attempted sale of a used automobile is fraudulent and void and passes no title whatever, legal or equitable, unless, as a reasonably contemporaneous part of the transaction, the previously issued certifi-

cate of ownership with a properly completed and acknowledged assignment thereof by the seller is delivered to the buyer.... *Id.* at 400 (citations omitted). An assignment is "acknowledged" if the seller signs the title before a notary public. *Id.* at 401. The court in *State Farm* denied insurance coverage on the basis that the automobile involved in the accident was not a newly acquired automobile within the terms of the insurance policy because title did not pass to the buyer. *Id.* at 402. Missouri courts consistently have construed § 301.210 to require that there be an acknowledgment of the assignment by the seller before a notary public. *Id.* at 401; *Equity Mut. Ins. Co. v. Creson,* 737 S.W.2d 265, 266 (Mo.App.1987); *Faygal v. Shelter Ins. Co.,* 689 S.W.2d 724, 726 (Mo.App.1985). Without a valid certificate of title, there is no insurable interest in the vehicle. *Creson,* 737 S.W.2d at 266–267.

■ Defendants counter that mother did acquire title to the vehicle and an insurable interest therein. They argue that *State Farm* is no longer the law in Missouri and advance a two-pronged analysis to support their position. The first prong of defendants' argument is that *State Farm* should no longer be followed because two significant events have occurred since the time of that decision. The first event was the elimination of notarization as a requirement for the assignment of motor vehicle titles. The Missouri Legislature amended § 407.536, RSMo (Cum. Supp.1992), effective August 28, 1989; and did away with the requisite notarization of odometer readings.[1] Accordingly, on July 2, 1990, the Department of Revenue issued a statement of its "Official Policy" which specifically abrogated the notary requirement on the assignment of titles, effective as of January 22, 1990.

The second significant event which occurred subsequent to the *State Farm* decision was the Missouri Legislature's enactment of The Motor Vehicle Financial Responsibility Law, § 303.025, RSMo (1986), effective July 1, 1987. The act requires that motorists maintain financial responsibility to operate a motor vehicle in Missouri. Defendants posit that the financial responsibility act reflects the public policy to provide insurance coverage to the fullest extent possible:

> The plain purpose of the 1986 amendment is to make sure that people who are injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators. This protection extends to occupants of the insured vehicle as well as to operators and occupants of other vehicles and pedestrians.

*Halpin v. American Family Mut. Ins. Co.,* 823 S.W.2d 479, 482 (Mo. banc 1992).

The second prong of defendants' analysis that *State Farm* is inapplicable centers on the decision in *Rodriguez v. General Accident Ins. Co. of America,* 808 S.W.2d 379 (Mo. banc 1991). Defendants claim that the *Rodriguez* decision implicitly overrules *State Farm. Rodriguez* dealt with a dispute over the meaning of the underinsured motorist coverage provision of an insurance policy. The court held that the contract between the insurance company and the insured clearly stated what was meant by an underinsured motor vehicle. *Id.* at 382. The thrust of defendants' reliance on *Rodriguez* hinges on language regarding the interpretation of terms in an insurance policy:

> An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of the words used in the contract. If there is a conflict between a technical definition within a contract, and the meaning which would reasonably be understood by the average lay person, a lay person's definition will be applied unless it plainly appears that the technical meaning is intended.

*Id.* (citations omitted). Against the backdrop of the general principles enunciated in *Rodriguez,* defendants contend that the terms "acquire ownership" in the insurance policy at issue should be given not a technical definition based on strict compliance with § 301.-210, but rather the meaning which would reasonably be understood by the average lay person. *See Id.*

1. Although neither party raised the issue of whether § 407.536 should be applied retroactively, it would appear that the law is merely procedural in nature and that retrospective application of the law to the transfer of title in the present action would be proper. *See Brennecka v. Director of Revenue,* 855 S.W.2d 509 (Mo.App.W.D. 1993); *Gershman Inv. Corp. v. Duckett Creek Sewer Dist.,* 851 S.W.2d 765 (Mo.App.E.D.1993).

■ The two, above-mentioned statutes enacted after the decision in *State Farm*, one eliminating the notary requirement and one requiring financial responsibility, indicate that the seller's failure to comply with the notary requirement should not operate to defeat the acquisition of either title or insurance coverage. Public policy considerations, as expressed by these statutes, mandate a definition of "acquire ownership" which is in keeping with the ordinary meaning attached to those words. This result is in accord with the *Rodriguez* decision which states that absent a definition of terms, the words in an insurance contract should be assigned their plain meaning. We, therefore, hold that *State Farm* is implicitly overruled, not by case law, but by legislative action.

Our holding addresses the concerns expressed by the dissent in *State Farm* regarding the problems attendant with the strict adherence to the notary requirement:

> Under the principal opinion, if a man were to trade his car at a used car dealer for a used car, and if when the used car dealer turned over the assigned certificate of title to him it was somehow defective (assume the notary public simply overlooked notarizing it), then if the purchaser had an accident while driving his newly acquired car home that same day, or if he turned it over to his son to drive it home and the son had an accident en route, there would be no liability coverage under the purchaser's policy. I do not believe the insurance company had any such intention when it wrote the policy, no[r] do I believe the insured expected there was any such technical loophole.

*State Farm*, 485 S.W.2d at 406 (Seiler, J. dissenting). It also addresses the problems which might occur in the context of multiple transfers of the same vehicle. Should the failure to comply with the notary requirement result in passing an invalid title to a motor vehicle, subsequent purchasers could be faced with the dilemma of not acquiring valid title to or an insurable interest in the vehicle. Because of the strong public policy of this State favoring insurance coverage, subsequent purchasers should be guaranteed that they will acquire an insurable interest in the vehicle they are purchasing, notwith-

standing a previous owner's failure to comply with the notary requirement when assigning title to the vehicle. Eliminating the notary requirement as a prerequisite to a valid title facilitates the State's intent to assure that subsequent purchasers will be able not only to secure valid title to the vehicle but also to procure insurance coverage for it.

■ In the instant action, the insurance policies do not define "acquire ownership." We, therefore, apply the ordinary meaning to that phrase. Despite the seller's failure to notarize her signature when assigning the title, mother did acquire ownership of the vehicle as well as an insurable interest therein. The insurance policies which covered mother were in effect at the time of the accident and provided coverage to Hafley, who was driving the vehicle. The trial court erred in entering declaratory judgment in favor of plaintiffs. Defendants' point on appeal is granted.

The judgment of the trial court is reversed and the cause is remanded with directions to the trial court to enter judgment consistent with this opinion.

REINHARD and CRIST, JJ., concur.